1   XAVIER BECERRA
    Attorney General of California
2   ANTHONY R. HAKL
    Acting Supervising Deputy Attorney General
3   JOHN W. KILLEEN
    Deputy Attorney General (attorney for notice)
4   State Bar No. 258395
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone: (916) 210-6045
      Fax: (916) 324-8835
7     E-mail: John.Killeen@doj.ca.gov
    *Attorneys for Defendant California Labor*
8   *Commissioner Julie Su*

9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                     WESTERN DIVISION

13

| 14 | **RICK SIEGEL,** | Case No. 2:17-cv-07203 CAS (SSx) |
|---|---|---|
| 15 | Plaintiff, | **CALIFORNIA LABOR** |
| 16 | **v.** | **COMMISSIONER JULIE SU'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 17 | | **OF MOTION FOR JUDGMENT ON THE PLEADINGS (FED. R.** |
| 18 | **JULIE SU,** in her official capacity as the California Labor Commissioner, | **CIV. P. 12(c))** |
| 19 | Defendant. | Date:        February 12, 2018 |
| 20 | | Time:        10:00 a.m. Courtroom:  8D |
| 21 | | Judge:       Hon. Christina A. Snyder Trial Date:   None Set |
| 22 | | Action Filed: September 29, 2017 |

23

24

25

26

27

28

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Introduction | | 1 |
| Statement of Facts | | 2 |
| I. | The TAA Is Designed to Protect Performers. | 2 |
| | A. The History of the TAA. | 2 |
| | B. The TAA Requires That Talent Agencies Be Licensed. | 3 |
| | C. The Labor Commissioner Enforces the TAA. | 4 |
| II. | In 2008, This Court Dismissed Siegel's Challenge to the Constitutionality of the TAA. | 6 |
| III. | The Complaint | 6 |
| Legal Standard | | 7 |
| Argument | | 7 |
| I. | The TAA Is Not Unconstitutionally Vague. | 7 |
| | A. Legal Standard for Vagueness Claims | 8 |
| | B. It Is Clear Who Is Subject to Regulation Under the TAA. | 9 |
| | C. It Is Clear What Activity Is Regulated by the TAA. | 10 |
| | 1. The TAA Gives Notice of What Is Prohibited. | 10 |
| | 2. The TAA Is Not Standardless. | 13 |
| | D. It Is Clear What the Consequences Are for Violating the TAA. | 14 |
| II. | The TAA Does Not Violate the Dormant Commerce Clause. | 16 |
| | A. Legal Standard for Dormant Commerce Clause Claims | 16 |
| | B. The TAA Does Not Discriminate Against Interstate Commerce. | 17 |
| | C. The TAA Does Not Operate Extraterritorially. | 18 |
| | D. *Pike* Balancing Is Not Required, but Even if It Were, It Weighs in Favor of Validity. | 21 |
| | 1. The TAA Does Not Place a Substantial Burden on Interstate Commerce. | 21 |
| | a. The TAA Does Not Regulate Conduct that Is Inherently National or Requires a National Regulatory Scheme. | 21 |
| | b. The TAA Does Not Burden Interstate Commerce. | 22 |
| | 2. Because There Is No Burden on Interstate Commerce, *Pike* Balancing Is Not Required. | 23 |
| | 3. Even Under *Pike* Balancing, the TAA Serves a Legitimate Local Purpose and Its Benefits Outweigh Any Burden on Interstate Commerce. | 23 |

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS
### (continued)

                                                                      **Page**

Conclusion..................................................................................25

# TABLE OF AUTHORITIES

` Page

**FEDERAL CASES**

*Ai v. United States*
   809 F.3d 503 (9th Cir. 2015) ..............................................................13

*Am. Acad. of Pain Mgmt. v. Joseph*
   353 F.3d 1099 (9th Cir. 2004) ............................................................24

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013) ........................................ 9, 18, 19, 23

*Boutilier v. INS*
   387 U.S. 118 (1967)............................................................................13

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
   476 U.S. 573 (1986)............................................................................17

*Chinatown Neighborhood Ass'n v. Harris*
   794 F.3d 1136 (9th Cir. 2015) ........................................ 19, 20, 22, 23

*Exxon Corp. v. Governor of Md.*
   437 U.S. 117 (1978)............................................................................23

*Goldfarb v. Va. State Bar*
   421 U.S. 773 (1975)............................................................................22

*Gospel Missions of Am. v. City of Los Angeles*
   328 F.3d 548 (9th Cir. 2003) ............................................................16

*Gravquick A/S v. Trimble Navigation Intern. Ltd.*
   323 F.3d 1219 (9th Cir. 2003) ..........................................................19

*Grayned v. City of Rockford*
   408 U.S. 104 (1972)..............................................................................8

*Gregg v. Hawaii, Dep't of Pub. Safety*
   870 F.3d 883 (9th Cir. 2017) ..............................................................7

*Gunn v. Minton*
   133 S. Ct. 1059 (2013)........................................................................22

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Healy v. Beer Inst.*
    491 U.S. 324 (1989)..................................................................................16

*Hill v. Colorado*
    530 U.S. 703 (2000).....................................................................................8

*Hills v. Scottsdale Unified Sch. Dist. No. 48*
    329 F.3d 1044 (9th Cir. 2003) ..................................................................14

*Hoye v. City of Oakland*
    653 F.3d 835 (9th Cir. 2011) ......................................................................8

*Hughes v. Oklahoma*
    441 U.S. 322 (1979).....................................................................................17

*Human Life of Wash. Inc. v. Brumsickle*
    624 F.3d 990 (9th Cir. 2010) ....................................................................11

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus.
    Relations*
    730 F.3d 1024 (9th Cir. 2013) ..................................................................18

*Lauwrier v. Garcia*
    No. 12-07381 MMM (C.D. Cal. Mar. 8, 2013)..............................10, 11

*Legal Aid Servs. of Or. v. Legal Servs. Corp.*
    608 F.3d 1084 (9th Cir.2010) .....................................................................8

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of
    Psychology*
    228 F.3d 1043 (9th Cir. 2000) ...................................................................24

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) ........................................................ *passim*

*Nat'l Conference of Pers. Managers v. Brown*
    No. 12-09620 DDP (RZX) (C.D. Cal. Aug. 13, 2015)..........................11, 12, 18

*Ohralik v. Ohio State Bar Ass'n*
    436 U.S. 447 (1978)......................................................................................22

**TABLE OF AUTHORITIES**
(continued)

Page

*Pest Comm. v. Miller*
   626 F.3d 1097 (9th Cir. 2010) ...............................................8, 10, 13

*Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*
   768 F.3d 1037 (9th Cir. 2014) ...............................................19

*Pickup v. Brown*
   740 F.3d 1208 (9th Cir. 2014) ...............................................8, 12, 14

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970)...................................................... 17, 21, 23

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
   442 F.3d 741 (9th Cir. 2006) ...............................................9, 14

*Sam Francis Found. v. Christies*
   784 F.3d 1320 (9th Cir. 2015) ...............................................18

*Siegel v. Brown*
   No. 08-2480 CAS (SSx) (C.D. Cal. Apr. 15, 2008) ........................6, 10

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*
   322 F.3d 1064 (9th Cir. 2003) ...............................................16

*Turtle Island Island Restoration Network v. U.S. Dep't of State*
   673 F.3d 914 (9th Cir. 2012) ...............................................16

*UFO Chuting of Haw., Inc. v. Smith*
   508 F.3d 1189 (9th Cir. 2007) ...............................................23, 24

*United States v. Osinger*
   753 F.3d 939 (9th Cir. 2014) ...............................................12

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*
   731 F.3d 843 (9th Cir. 2013) ...............................................17, 23

**STATE CASES**

*Auto Equity Sales, Inc. v. Superior Court*
   369 P.2d 937 (Cal. 1962) ...............................................13

# TABLE OF AUTHORITIES
## (continued)

`Page

*Buchwald v. Katz*
   503 P.2d 1376 (Cal. 1972) .......................................................................5

*Buchwald v. Superior Court*
   254 Cal. App. 2d 347 (1967) ..............................................................15

*In re Noreen G.*
   181 Cal. App. 4th 1359 (2010) ...........................................................8

*Marathon Entm't, Inc. v. Blasi*
   42 Cal. 4th 974 (2008) ..............................................................*passim*

*McIntosh v. Mills*
   121 Cal. App. 4th 333 (2004) ............................................................14

*People v. Superior Court (Caswell)*
   758 P.2d 1046 (Cal. 1988) ...................................................................8

*Styne v. Stevens*
   26 P.3d 343 (Cal. 2001) ............................................................*passim*

*Wachs v. Curry*
   13 Cal. App. 4th 616 (1993) ...............................................11, 12, 13

*Waisbren v. Peppercorn Prods., Inc.*
   41 Cal. App. 4th 246 (1995) ..............................................................15

*Yoo v. Robi*
   126 Cal. App. 4th 1089 (2005) ...................................................15, 20

**STATUTES**

California Business and Professions Code
   § 6049.1 .............................................................................................19

California Civil Code
   § 1550 ................................................................................................14
   § 1596 ................................................................................................14

**TABLE OF AUTHORITIES**
**(continued)**

Page

§ 1598....................................................................................14
§ 1599....................................................................................14
§ 1608....................................................................................14
§ 1667....................................................................................14
§ 1812.501(a).........................................................................11
§ 3513....................................................................................14

California Elections Code
§ 18520..................................................................................11

California Labor Code
§ 1700...............................................................................1, 21
§ 1700.1............................................................................3, 10
§ 1700.4............................................................................passim
§ 1700.5............................................................................passim
§ 1700.44(a)........................................................................4, 5
§ 1779....................................................................................11
§ 3080(a)...............................................................................11

Florida Statutes
§ 468.401 - § 468.415 ..........................................................21

Illinois Comp. Stat.
§ 515/0.01.............................................................................21

New York General Business Law
§ 170 - § 191 .......................................................................21

**CONSTITUTIONAL PROVISIONS**

California Constitution
Article I, § 7 ..........................................................................8

United States Constitution
Article I, § 8, cl. 3 ................................................................16

**OTHER AUTHORITIES**

2009 Cal. Legis.
Serv. Chapter 286 (A.B. 1319) ...........................................24

# TABLE OF AUTHORITIES
## (continued)

**Page**

1 B.E. Witkin, Summary of California Law Contracts (11th ed. Oct. 2017 update)................................................................................14

Paul Lukacs, *How New York and Tennessee Regulate Talent Agencies*, 14-Fall Ent. & Sports Law. 15 (1996) ................................................22

### CALIFORNIA LABOR COMMISSIONER DETERMINATIONS

*Baker v. Bash*, Case No. TAC 12-96 (Dec. 27, 1996) ...........................20

*Blanks v. Riccio*, Case No. TAC 7163 (Jan. 9, 2009) .............................13

*Breuer v. Top Draw Entertainment, Inc.*, Case No. TAC 18-95 (July 18, 1996) ..............................................................................20

*Brooks v. Ax*, Case No. TAC 43-04 (Nov. 7, 2006) ................................13

*James v. Thompson Management*, Case No. TAC 17-03 (Apr. 25, 2006) ................................................................................19, 20

*Miravalles v. Artists, Inc.*, Case No. TAC 33-99 (Oct. 11, 2000) ..........13

*Robi v. Wolf*, Case No. TAC 29-00 (Mar. 21, 2002) ..............................20

*Solis v. Blancarte*, Case No. TAC 27089 (Sept. 30, 2013) ....................13

*Tyler v. Laugh Factory*, Case No. TAC 31-01 (Feb. 3, 2006)................13

**INTRODUCTION**

This is a constitutional challenge to a professional licensing statute. Since 1913, California has protected aspiring artists—those who want to perform in the movies, television, radio, or on the stage—by requiring those who profit from such artists' efforts, as their talent agents, to be licensed and regulated. In its current iteration, California's Talent Agencies Act, Cal. Lab. Code §§ 1700 *et seq.* ("TAA"), requires those who "procure" "employment" for "artists" to obtain a license from California's Labor Commissioner (currently Julie A. Su). Artists may procure employment for themselves, but anyone who represents them in their dealings, for example with movie studios or television companies, must be licensed.

The paramount goal of the TAA is to protect artists, and particularly young artists, from exploitation by unscrupulous promoters who offer them "a foot in the door," only then to take a disproportionate share of earnings or to arrange unsuitable professional engagements. To curb such abuses, the TAA requires licensed "talent agencies" and "agents" to safeguard artists' physical safety and financial interests. The Labor Commissioner oversees talent agencies to ensure that they are complying with the TAA's detailed requirements.

Like other licensing statutes, the TAA prohibits unlicensed work. Just as an unlicensed person is prohibited from practicing law, acting as a general contractor, or acting as a real estate broker in California, so too an unlicensed person is prohibited from "procuring" "employment" for "artists." The remedy for unlicensed procurement is the same as for other unlicensed work in California: a contract made in violation of the licensing statute is void. Just as an unlicensed general contractor is barred from recovering for his or her unlicensed work, an unlicensed person who procures employment for an artist cannot compel the artist to turn over a commission on the artist's earnings.

Plaintiff Rick Siegel is a "personal manager" who has provided various services to artists but who is not licensed as a "talent agent" in California. Siegel

1

1   would like to procure employment for artists and receive a commission for that
2   procurement, but would prefer not to be licensed as a talent agent.  Rather than
3   submit to licensure, Siegel has sued, alleging that the TAA's licensing requirement
4   is unconstitutional based on a variety of theories.

5       Siegel's primary claim is that the TAA is unconstitutionally vague.  This is not
6   the first time the Court has seen this claim brought by this plaintiff.  In 2008, Siegel
7   advanced, and the Court rejected, the exact same arguments Siegel raises here.  The
8   Court's 2008 ruling has preclusive effect in this case and bars Siegel's claims.

9       Likewise, the TAA does not violate the Federal Constitution's Dormant
10  Commerce Clause.  Like other licensing regimes, the TAA requires that individuals
11  who engage in regulated activity in California be licensed.  But anyone, whether
12  located in-state or out-of-state, can obtain a license if they meet the TAA's
13  requirements.  Thus, the TAA neither discriminates against out-of-state residents
14  nor burdens interstate commerce.[1]

15      Because the complaint fails to state a plausible claim for relief, the Labor
16  Commissioner requests that the Court enter judgment on the pleadings in her favor.

## STATEMENT OF FACTS

### I.   THE TAA IS DESIGNED TO PROTECT PERFORMERS.

#### A.   The History of the TAA.

"In Hollywood, talent . . . is represented by two groups of people: agents and managers."  *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 980 (2008) ("*Marathon*").  "Agents procure roles; they put artists on the screen, on the stage, behind the camera."  *Id.*  "Managers coordinate everything else; they counsel and advise, take care of business arrangements, and chart the course of an artist's career."  *Id.*  The Talent Agencies Act requires that anyone who acts as a talent agent be licensed.

---

[1] On November 29, the Court approved the parties' stipulation amending the complaint to remove Siegel's eighth cause of action (due process) and ninth cause of action.  *See* Dkt. No. 12.  These claims are no longer at issue in this case.

1    "The Act's roots extend back to 1913, when the [California] Legislature

2    passed the Private Employment Agencies Law and imposed the first licensing

3    requirements for employment agents." *Marathon*, 42 Cal. 4th at 984. "From an

4    early time, the Legislature was concerned that those representing aspiring artists

5    might take advantage of them, whether by concealing conflicts of interests when

6    agents split fees with the venues where they booked their clients, or by sending

7    clients to houses of ill-repute under the guise of providing 'employment

8    opportunities.'" *Id.* "Exploitation of artists by their representatives has remained

9    the Act's central concern . . . to the present day." *Id.*

10   **B.    The TAA Requires That Talent Agencies Be Licensed.**

11       "In its present incarnation, the Act requires anyone who solicits or procures

12   artistic engagement for artists to obtain a talent agency license." *Marathon*, 42 Cal.

13   4th at 985; *see* Cal. Lab. Code §§ 1700.5 (requiring license), 1700.4 (defining

14   "artist"), 1700.1-1700.3 (other definitions). A "talent agency" is defined as "a

15   person or corporation who engages in the occupation of procuring, offering,

16   promising, or attempting to procure employment or engagements for an artist or

17   artists."[2] Cal. Lab. Code § 1700.4(a). The TAA "regulates *conduct*, not labels; it is

18   the act of procuring (or soliciting), not the title of one's business, that qualifies one

19   as a talent agency." *Marathon*, 42 Cal. 4th at 986.

20       The TAA "establishes detailed requirements for how licensed talent agencies

21   conduct their business, including a code of conduct, submission of contracts and fee

22   schedules to the state, maintenance of a client trust account, posting of a bond, and

23   prohibitions against discrimination, kickbacks, and certain conflicts of interest."

24   *Marathon*, 42 Cal. 4th at 985 (citing Cal. Lab. Code §§ 1700.23-1700.47).

25       No separate analogous licensing or regulatory scheme extends to personal

26   managers. *Marathon*, 42 Cal. 4th at 985. "In 1978, the Legislature considered

27   _____

28   [2] The Act exempts from licensure those who procure "recording contracts" for artists. Cal. Lab. Code § 1700.4(a).

1    establishing a licensing scheme for personal managers," but abandoned the idea.

2    *Id.* at 984. Because the TAA is "narrowly focused on efforts to secure professional

3    'employment or engagements'" for artists, it does not regulate "other services for

4    which artists often contract, such as personal and career management (i.e. advice,

5    direction, coordination, and oversight with respect to an artist's career or personal

6    or financial affairs)." *Styne v. Stevens*, 26 P.3d 343, 349 (Cal. 2001) ("*Styne*").

7    "[N]or does it govern assistance in an artist's business transactions other than

8    professional employment." *Id.*

9         Accordingly, the TAA has no effect on personal managers' activities unless

10   and until they elect to "procure" "employment" for "artists." Only to the extent

11   they engage in this specific activity must they be licensed as talent agents. *See*

12   *Marathon*, 42 Cal. 4th at 986 ("a personal manager who solicits or procures

13   employment for his artist-client is subject to and must abide by the Act"); Cal. Lab.

14   Code §§ 1700.5, 1700.4(a).

15        **C.    The Labor Commissioner Enforces the TAA.**

16        The Labor Commissioner issues licenses to prospective talent agencies and

17   oversees their compliance with the TAA's requirements. *See* Cal. Lab. Code §§

18   1700.6-1700.41. While the Labor Commissioner does not directly regulate

19   personal managers, a personal manager may come within her jurisdiction if the

20   manager and an artist have a dispute regarding whether the manager has "procured"

21   "employment" for the artist without being licensed as a talent agent. *See Styne*, 26

22   P.3d at 351-52; Cal. Lab. Code § 1700.44(a).

23        The Commissioner's authority is limited to hearing and determining the TAA-

24   related dispute between artist and manager, or else certifying that there is no

25   controversy. *See* Cal. Lab. Code § 1700.44(a). The TAA gives the Commissioner

26   "original and exclusive jurisdiction over issues" arising under its provisions.

27   *Marathon*, 42 Cal. 4th at 981 n.2. But the Commissioner's determinations are not

28   final; either party may appeal to the superior court within 10 days for a trial. *See*

1    Cal. Lab. Code § 1700.44(a). While such a trial is de novo, the parties can and do

2    rely on evidence, testimony and pleadings that were presented in the

3    Commissioner's hearing. *See Buchwald v. Katz*, 503 P.2d 1376, 1380 (Cal. 1972);

4    *see also Marathon*, 42 Cal. 4th at 982. If no trial is requested (or is requested but

5    no bond is posted), the prevailing party may petition to confirm the

6    Commissioner's award and enforce the resulting judgment. *See Buchwald*, 503

7    P.2d at 1380.

8         *Marathon* reflects a typical dispute between an artist and a personal manager.

9    In that case, Siegel's company Marathon, which was not licensed as a talent

10   agency, and the actor Rosa Blasi "entered into an oral contract for Marathon to

11   serve as Blasi's personal manager." *Marathon*, 42 Cal. 4th at 981. "Marathon was

12   to counsel Blasi and promote her career; in exchange, Blasi was to pay Marathon 15

13   percent of her earnings from entertainment employment obtained during the course

14   of the contract." *Id.* After Blasi appeared in a film and television series, she

15   allegedly reneged on her oral agreement by not remitting the full 15% of her

16   earnings to Marathon. *Id.* Marathon sued Blasi, "seeking to recover unpaid . . .

17   commissions." *Id.*

18        "After obtaining a stay of the action, Blasi filed a petition with the Labor

19   Commissioner alleging that Marathon had violated the Act by soliciting and

20   procuring employment for Blasi without a talent agency license." *Marathon*,

21   42 Cal. 4th at 981. The Labor Commissioner "[c]oncluded that one or more acts of

22   solicitation and procurement by Marathon violated the Act." *Id.* at 981. As a

23   remedy, the Labor Commissioner "voided the parties' contract *ab initio* and barred

24   Marathon from recovery." *Id.* at 981.

25        Following Marathon's appeal to the superior court, the dispute eventually

26   reached the California Supreme Court, which (1) affirmed the propriety of voiding

27   artist-manager contracts when a personal manager has illegally procured

28   employment for the artist; but (2) applying a severability analysis, held that

1    personal managers could be entitled to recover for the non-procurement services

2    they *lawfully* provided to an artist. *Marathon*, 42 Cal. 4th at 986-98.

3    **II.  IN 2008, THIS COURT DISMISSED SIEGEL'S CHALLENGE TO THE CONSTITUTIONALITY OF THE TAA.**

5         Shortly after the California Supreme Court issued its opinion in *Marathon*,

6    Siegel filed a lawsuit in this Court, challenging the constitutionality of the TAA.

7    *See Siegel v. Brown*, No. 08-2480 CAS (SSx) (C.D. Cal. Apr. 15, 2008). Among

8    other claims, the initial complaint alleged that the TAA was unconstitutionally

9    vague because "There Is Uncertainty With Regard To Who Is Within The Scope Of

10   The Act"; "There Is Uncertainty With Regard To What Conduct Is Prohibited"; and

11   "There Is Uncertainty About the Punishment That Should Be Imposed." *See* Def.'s

12   Req. for Judical Notice ("RJN"), Ex. A at 4-8. After the Labor Commissioner filed

13   a motion to dismiss the complaint, on July 14, 2008, the Court granted the motion

14   with leave to amend. *See* RJN, Ex. B.

15        Siegel filed a first amended complaint on July 25. *See* RJN, Ex. C. Though

16   framed as different causes of action, much of the content of the first amended

17   complaint was similar to the content of the initial complaint. *Id.* After the Labor

18   Commissioner filed a motion to dismiss, the Court dismissed the first amended

19   complaint, this time without leave to amend. *See* RJN, Ex. D, *also available at*

20   2008 WL 4195949. The Ninth Circuit affirmed the Court's ruling in an

21   unpublished opinion. *See* 360 F. App'x 832 (9th Cir. Dec. 29, 2009).

22   **III.  THE COMPLAINT**

23        "After a decade away from the [personal manager] profession," on July 24,

24   2017, Siegel filed the operative complaint in state court. *See* Compl. ¶ 10. The

25   Labor Commissioner promptly filed an answer and removed the case to this Court.

26   *See* Dkt. No. 1. On October 6, the Court determined that this case was related to

27   Siegel's 2008 case and reassigned the matter accordingly. *See* Dkt. No. 7.

28

1       As in his 2008 complaint, Siegel alleges that the TAA is unconstitutionally

2   vague on its face and as-applied because it is unclear "(1) who is being subjected to

3   the regulation, (2) what activity is being regulated, and (3) the consequences for

4   ignoring the limitations/prohibitions of the regulation." Compl. ¶ 17; *see also id.*,

5   ¶¶ 29-31, 31-33, 34-41, 42-46, 47-48, 49-54.  Additionally, Siegel alleges that the

6   TAA "violates the Interstate Commerce Clause of the U.S. Constitution." Compl.

7   ¶¶ 55-66.  The complaint also included an eighth cause of action and a ninth cause

8   of action. *See* Compl. ¶¶ 67-78.  Following the parties' conferences pursuant to

9   Local Rule 7-3, Siegel agreed to amend the complaint to remove these allegations.

10   *See* Dkt. No. 12.

11                      **LEGAL STANDARD**

12       "Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6)

13   motion, the same standard of review applies to motions brought under either rule."

14   *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (internal

15   citations and quotations omitted).  The allegations of the complaint "must plausibly

16   suggest an entitlement to relief." *Id.* "A judgment on the pleadings is properly

17   granted when, taking all the allegations in the pleadings as true, the moving party is

18   entitled to judgment as a matter of law." *Id.*

19                        **ARGUMENT**

20   **I.**   **THE TAA IS NOT UNCONSTITUTIONALLY VAGUE.**

21       The complaint alleges that the TAA is unconstitutionally vague because it is

22   unclear "(1) who is being subjected to the regulation, (2) what activity is being

23   regulated, and (3) the consequences for ignoring the limitations/prohibitions of the

24   regulation." Compl. ¶ 17.  Siegel raised identical claims in this Court in 2008.  The

25   Court rejected Siegel's contentions and dismissed his complaint with prejudice.

26   The Court's 2008 ruling is issue-preclusive in this case, which involves the same

27   issues and is being brought by the same party.  In addition to being preclusive, the

28   Court's 2008 ruling was correct.  Therefore, this claim must be dismissed.

## A.   Legal Standard for Vagueness Claims

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Though facial and as-applied challenges "differ in the extent to which the invalidity of a statute need be demonstrated," *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir.2010), the "substantive legal tests used in the two challenges are 'invariant.'" *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (quoting *Legal Aid Servs. of Or.*, 608 F.3d at 1096).  "To determine whether a statute is unconstitutionally vague as applied, a two-part test is used: a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *Pest Comm. v. Miller*, 626 F.3d 1097, 1111 (9th Cir. 2010); *see Hill v. Colorado*, 530 U.S. 703, 733 (2000) (applying same standard in facial challenge).[3]

In applying this standard, "perfect clarity and precise guidance have never been required" of a statute. *Pickup v. Brown*, 740 F.3d 1208, 1233, *as amended on denial of petition for reh'g* (9th Cir. 2014) (citation omitted) ("*Pickup*").  "While there is little doubt that imagination can conjure up hypothetical cases in which the meaning of [ ] terms will be in nice question, because we are condemned to the use of words, we can never expect mathematical certainty from our language." *Hill*, 530 U.S. at 733 (citations and quotations omitted).

/ / /

/ / /

/ / /

---

[3] To the extent Siegel raises claims under article I, section 7 of the California Constitution, there does not appear to be any difference between the vagueness analysis under the Federal Constitution and the vagueness analysis under the California Constitution. *See, e.g., People v. Superior Court (Caswell)*, 758 P.2d 1046, 1048 (Cal. 1988); *In re Noreen G.*, 181 Cal. App. 4th 1359, 1373 (2010).

1  Because the TAA, which is an economic regulation with no criminal

2  penalties,[4] provides reasonable notice of what is prohibited and sufficient standards

3  for its enforcement, it is not unconstitutionally vague.

4        **B.   It Is Clear Who Is Subject to Regulation Under the TAA.**

5      First, Siegel alleges that the TAA is unconstitutionally vague because "it is

6  impossible for an ordinary person to ascertain whether the [TAA] regulates only

7  those who hold themselves out as title-holders of the specialty of talent agent, or

8  whether the Act . . . incorporates anyone regardless of claimed occupation, who

9  engages in the defined activities of the talent agency." Compl. ¶ 31.

10      Siegel raised this claim in his prior lawsuit. *See* RJN, Ex. B at 6 ("Siegel

11  alleges that it is not clear who is subject to the TAA"). The Court rejected this

12  contention. *See id.* at 2 (describing TAA), 13-14 (rejecting Siegel's claim); RJN,

13  Ex. D at 6-7 (again rejecting Siegel's claim). Because the same issue was

14  adjudicated against the same party in an earlier proceeding, the Court's 2008 ruling

15  is issue-preclusive here. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d

16  741, 746 (9th Cir. 2006) (standard for issue preclusion).

17      Even if it did not have preclusive effect (which it does), the Court's

18  determination was, and remains, correct. The TAA "regulates conduct, not labels;

19  it is the act of procuring (or soliciting), not the title of one's business, that qualifies

20  one as a talent agency." *Marathon*, 42 Cal. 4th at 986. The TAA does not regulate

21  "other services for which artists often contract, such as personal and career

22  management (i.e. advice, direction, coordination, and oversight with respect to an

23  artist's career or personal or financial affairs)." *Styne*, 26 P.3d at 349. Nor does it

24  govern assistance in an artist's business transactions other than professional

25  employment. *Id.* Accordingly, the TAA has no effect on personal managers'

26  activities unless and until they elect to "procure" "employment" for "artists." Only

27      [4] "Economic regulation is subject to a less strict vagueness test than criminal

28  laws." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 946 (9th Cir. 2013) (citations and quotations omitted).

to the extent they engage in this specific activity must they be licensed as talent agents. *See Marathon*, 42 Cal. 4th at 986 ("a personal manager who solicits or procures employment for his artist-client is subject to and must abide by the Act"); Cal. Lab. Code §§ 1700.5, 1700.4(a); *see also Lauwrier v. Garcia*, No. 12-07381 MMM (SHx) (C.D. Cal. Mar. 8, 2013), 2013 WL 11238497, *6 (relying on *Siegel*). Thus, it is clear who is subject to the TAA.

### C.    It Is Clear What Activity Is Regulated by the TAA.

Second, Siegel argues that the TAA is unconstitutionally vague because it is not clear what the term "procuring . . . employment" means. *See* Compl. ¶¶ 36, 40-46; Cal. Lab. Code § 1700.4(a).

Siegel also raised this claim in his prior lawsuit. *See* RJN, Ex. A at 8-9; RJN, Ex. D at 3 ("Plaintiff also alleges that because the TAA does not define the term 'procurement,' it does not provide fair warning of the conduct it prohibits."). The Court effectively rejected this theory, though without discussing it in detail. RJN, Ex. B at 13 ("Nor cannot [sic] it be said that the TAA failed to put Siegel, a person, on notice that the TAA would apply to him . . .").

The Court's earlier ruling was correct. The TAA (1) "gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and (2) "provides explicit standards for those who apply it." *Pest Comm. v. Miller*, 626 F.3d 1097, 1111 (9th Cir. 2010).

### 1.    The TAA Gives Notice of What Is Prohibited.

A statute may be struck down as vague if its terms are "so lacking in meaning as to be invalid." *Pest Comm.*, 626 F.3d at 1111 (citations and quotations omitted). The TAA forbids unlicensed individuals from "procuring" "employment" for artists. Cal. Lab. Code § 1700.4; *see id.*, § 1700.5. Because the terms "procuring" and "employment" are not defined in the TAA (though "engagement" is, *see* Cal. Lab. Code § 1700.1), courts must construe them "according to [their] ordinary,

1  contemporary, common meaning." *Human Life of Wash. Inc. v. Brumsickle*, 624

2  F.3d 990, 1021 (9th Cir. 2010) (citations omitted).

3        As other courts have found, the terms "procure" and "employment," construed

4  in their ordinary meanings, are not unconstitutionally vague. *See Nat'l Conference*

5  *of Pers. Managers v. Brown*, No. 12-09620 DDP (RZX) (C.D. Cal. Aug. 13, 2015),

6  2015 WL 4873541, *6-7, *aff'd*, 690 F. App'x 461 (9th Cir. Apr. 25, 2017); *Wachs*

7  *v. Curry*, 13 Cal. App. 4th 616, 626 (1993), *abrogated on other grounds as*

8  *recognized in Marathon*, 42 Cal. 4th at 987; *cf. Lauwrier*, 2013 WL 11238497, *8

9  (evaluating whether activities constituted the "procure[ment]" of "employment").

10       In *Wachs*, the California Court of Appeal determined that the term "procure"

11 was not "so lacking in objective content as to render [the TAA] facially

12 unconstitutional." *Wachs*, 13 Cal. App. 4th at 629.[5] Citing Webster's Dictionary,

13 the court held that to "'procure' means 'to get possession of: obtain, acquire, to

14 cause to happen or be done: bring about.'" *Id.* at 628; *see also* Black's Law

15 Dictionary (10th ed. 2014) (defining "procure" as "to obtain (something)"). The

16 court in *Wachs* also noted that "the term 'procure' in connection with employment

17 is used in numerous California statutes. The fact that none of these statutes has

18 ever been challenged is some evidence the term is well understood." *Wachs*, 13

19 Cal. App. 4th at 629; *see also* Cal. Lab. Code § 3080(a) (labor union must "use its

20 best endeavors *to procure employment* and training for an apprentice") (emphasis

21 added); *id.*, § 1779 (penalty for any person who collects fee for giving information

22 "as to where [public work] *employment may be procured*") (emphasis added); Cal.

23 Civ. Code § 1812.501(a)(1) ("employment agency" defined as one who "*procures,*

24 *offers, promises, or attempts to procure employment or engagements for others*")

25 (emphasis added); Cal. Elec. Code § 18520 ("A person shall not . . . promise to

26

27       [5] Though the *Wachs* court's discussion of "incidental procurement" has been
   abrogated, *see Marathon*, 42 Cal. 4th at 987-88, its analysis of whether the term
28 "procure" is vague remains good law.

1    *procure* or endeavor to procure any office, place or *employment* to or for any

2    voter . . . .") (emphasis added).

3         Thus, the term "procure" is not an "esoteric or complicated term [ ] devoid of

4    common understanding" in California law. *United States v. Osinger*, 753 F.3d 939,

5    945 (9th Cir. 2014). Instead, it bears a common meaning: to "obtain (something),"

6    Black's Law Dictionary (10th ed. 2014), or "get possession of" something, *Wachs*,

7    13 Cal. App. 4th at 628; *see Nat'l Conference of Pers. Managers*, 2015 WL

8    4873541, at *6-7, *aff'd*, 690 F. App'x 461 (9th Cir. Apr. 25, 2017) (finding phrase

9    "procure . . . employment" not vague).

10        As applied to the TAA, "[g]enerally speaking, an agent's focus is on the deal:

11    on negotiating numerous short-term, project-specific engagements between buyers

12    and sellers." *Marathon*, 42 Cal. 4th at 983. In this context, in the vast majority of

13    circumstances, it will not be a mystery when "employment" has been "procured."

14    If an unlicensed person succeeds in booking an artist for an engagement, he or she

15    has "procured" employment for that artist. Conversely, if the unlicensed person

16    fails to book the artist for an engagement, he or she has not "procured employment"

17    for the artist. This meaning would be "clear enough to the reasonable person."

18    *Pickup*, 740 F.3d at 1234.

19        Of course, unlicensed personal managers do not need a license to provide

20    "other services for which artists often contract, such as personal and career

21    management (i.e. advice, direction, coordination, and oversight with respect to an

22    artist's career or personal or financial affairs)." *Styne*, 26 P.3d at 349. But when a

23    personal manager turns from providing services to the artist (which might include

24    generalized distribution of information) to interacting with third parties for the

25    purpose of obtaining a specific engagement for the artist, and then purports to

26    "close the deal" on behalf of the artist, the personal manager crosses the line from

27    providing permissible services to "procuring" employment for the artist.

28    / / /

## 2.    The TAA Is Not Standardless.

The TAA also "provides explicit standards for those who apply it." *Pest Comm.*, 626 F.3d 1097 at 1111.  To demonstrate unconstitutionality under this prong, "the question is not whether the government applied or interpreted" the TAA "consistently." *Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015).  Instead, the plaintiff must prove that the TAA is "so vague and indefinite as really to be no rule or standard at all." *Id.* (citing *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).

The TAA is not standardless.  It prohibits unlicensed persons from "procuring employment" for artists, a term that has been interpreted by courts.  Cal. Lab. Code § 1700.4; *see supra* Section I(C)(1).  The Labor Commissioner has applied this definition of "procure" in determining whether an unlicensed individual unlawfully "procured" employment for an artist.  *See, e.g.*, RJN, Exs. E (*Blanks*), F (*Ax*), G (*Tyler*), H (*Miravalles*), I (*Blancarte*).  Any superior court hearing an appeal from the Labor Commissioner's ruling would be bound to apply the *Wachs* court's definition, since in California intermediate appellate court opinions bind all of the State's trial courts.  *See Auto Equity Sales, Inc. v. Superior Court*, 369 P.2d 937, 940 (Cal. 1962).  Taken together, these authorities provide a constitutionally adequate standard to apply.

The Labor Commissioner anticipates that Siegel will point to alleged inconsistences in Labor Commissioner decisions to argue that the TAA is standardless.  *See* Compl. ¶ 46; *see also Marathon*, 42 Cal. 4th at 990 (noting "struggle" for consistency).  But even if the Labor Commissioner and the California courts may not have "reached a perfectly uniform approach to analyzing" the TAA, "the lack of 'perfect clarity and precise guidance' is not a sufficient basis for declaring the provisions unconstitutionally vague." *Pest Comm.*, 626 F.3d at 1112 (citation omitted).  It must be apparent that there is "no rule or standard at all," *Ai*, 809 F.3d at 514, which Siegel has not come close to demonstrating.

13

1   For any statutory scheme, it is always possible to identify a hypothetical
2   factual situation to which a law has yet to be applied "with perfect clarity and
3   precise guidance." *Pickup*, 740 F.3d at 1233 (citation omitted). But "that there
4   may be some 'close cases' or difficult decisions does not render" a law
5   "unconstitutionally vague." *Hills v. Scottsdale Unified Sch. Dist. No. 48*, 329 F.3d
6   1044, 1056 (9th Cir. 2003). The TAA, on its face, provides unlicensed individuals
7   with fair notice of what conduct is prohibited and a standard for the Labor
8   Commissioner and California's courts to follow.

9   **D.   It Is Clear What the Consequences Are for Violating the TAA.**
10   Third, Siegel alleges that the TAA is unconstitutionally vague because it is not
11   clear what the consequences are for violating the TAA. *See* Compl. ¶¶ 47-54.
12   Once again, this claim was raised and rejected in Siegel's prior lawsuit. See
13   RJN, Ex. B at 7 ("Siegel attacks the application of the TAA because the statute does
14   not give notice of the penalty for engaging in prohibited conduct"); *id.* at 14
15   (rejecting argument); RJN, Ex. D at 6-7 (recognizing rejection of argument). Thus,
16   as to this issue as well, the Court's 2008 ruling is issue-preclusive. *See Reyn's*
17   *Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).
18   Even if it did not have preclusive effect (which it does), the Court's
19   determination was, and remains, correct. Under California law, the general rule is
20   that a contract made in violation of statutory law is void. *See* Cal. Civ. Code §§
21   1550, 1596, 1598, 1599, 1608, 1667, 3513; 1 B.E. Witkin, Summary of California
22   Law Contracts § 487 (11th ed. Oct. 2017 update) (describing general rule); *see, e.g.*,
23   *McIntosh v. Mills*, 121 Cal. App. 4th 333, 343-346 (2004) (voiding fee sharing
24   agreement between attorney and non-attorney). California courts have consistently
25   applied this rule in the context of the TAA. *See Styne*, 26 P.3d at 349 ("an
26   unlicensed person's contract with an artist to provide the services of a talent agency
27   is illegal and void"), 352 ("the Commissioner may declare the contract void");
28   *Marathon*, 42 Cal. 4th at 992 n.11 (approving *Styne*), 994 ("the Labor

1   Commissioner has the 'power' to void contracts"); *Yoo v. Robi*, 126 Cal. App. 4th

2   1089, 1103 (2005) ("California courts have uniformly held that a contract . . . is

3   void ab initio"); *Waisbren v. Peppercorn Prods., Inc.*, 41 Cal. App. 4th 246, 261

4   (1995); *Buchwald v. Superior Court*, 254 Cal. App. 2d 347, 351 (1967).

5       Siegel appears to be recycling an argument he has raised before:  that a

6   contract cannot be voided if the regulatory statute prescribes what is unlawful, but

7   does not prescribe a separate penalty.  *See* Compl. ¶¶ 49-54; RJN, Ex. D at 7

8   ("Plaintiff again argues . . .").  While a criminal penalty provides one basis for

9   finding a contract unlawful, Siegel cannot cite any authority that limits the effect of

10  the relevant Civil Code sections to only statutes that prescribe a criminal penalty.

11  On the contrary, the California Court of Appeals considered and rejected this

12  precise argument in *Waisbren*. *See Waisbren*, 41 Cal. App. 4th at 261("Nothing in

13  the case law requires the existence of criminal penalties as a prerequisite to

14  declaring an illegal contract to be void").

15      As the court in *Waisbren* explained, "the legislative history of the Act directly

16  contradicts" the argument made by Waisbren then and Siegel now. *Waisbren*, 41

17  Cal. App. 4th at 261.  Predecessors to the TAA contained criminal penalties.  In

18  1982, the Legislature "eliminated criminal sanctions for violations of the Act."

19  *Marathon*, 42 Cal. 4th at 985.  Also in 1982, the Legislature created the California

20  Entertainment Commission to advise it concerning licensing of talent agencies.

21  *Waisbren*, 41 Cal. App. 4th at 256.  The Commission "specifically addressed the

22  question of whether criminal sanctions should be imposed for violations of the

23  Act." *Id.* at 262.  The Commission recommended against the imposition of

24  criminal sanctions, in part because the *existing remedy* of contract voidness was

25  sufficient. *Id.*  The Legislature followed this recommendation, and thereby

26  "approved the remedy of declaring agreements void if they violate the Act.  Thus,

27  an agreement that violates the licensing requirement is illegal and unenforceable

28  despite the lack of criminal sanctions." *Id.; see Yoo*, 126 Cal. App. 4th at 1104.

1    Accordingly, the TAA is not vague even though it does not specifically

2  prescribe any additional penalty.

3  **II.    THE TAA DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE.**

4    Siegel also alleges that the TAA violates the Federal Constitution's Dormant

5  Commerce Clause.  Compl. ¶¶ 55-66.  At the outset, this claim is barred under

6  principles of claim preclusion.  *See Tahoe-Sierra Preservation Council, Inc. v.*

7  *Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).  "Newly

8  articulated claims based on the same nucleus of facts may still be subject to a res

9  judicata finding if the claims could have been brought in the earlier action."  *Id.* at

10  1078.  Nothing prevented Siegel from bringing this facial constitutional claim in his

11  2008 litigation, which involved the same parties, a final judgment, and the same

12  factual basis—the TAA and the Labor Commissioner's interpretations of the TAA.

13  *See Turtle Island Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914,

14  918 (9th Cir. 2012) (applying claim preclusion where "technically different legal

15  challenges" arose from the "same transactional nucleus of facts"); *see also Gospel*

16  *Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 556 (9th Cir. 2003) (no

17  "exception to res judicata when the claim involves a statute's unconstitutionality").

18  His failure to bring a Commerce Clause claim in that litigation bars the claim now.

19    Even if not barred, this claim fails as a matter of law:

20  **A.    Legal Standard for Dormant Commerce Clause Claims**

21    The Commerce Clause includes an implied limitation on the states' authority

22  to adopt legislation that affects commerce.  This implied limitation is often referred

23  to as the negative or dormant Commerce Clause.  *See Healy v. Beer Inst.*, 491 U.S.

24  324, 326 n.1 (1989); U.S. Const. art. I, § 8, cl. 3.  "Modern dormant Commerce

25  Clause jurisprudence primarily is driven by concern about economic protectionism

26  – that is, regulatory measures designed to benefit in-state economic interests by

27  burdening out-of-state competitors."  *Nat'l Ass'n of Optometrists & Opticians v.*

28  *Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (quotation omitted).

1    Courts apply a two-tiered analysis to dormant Commerce Clause claims.

2    *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79

3    (1986).  First, a statute that directly regulates or discriminates against interstate

4    commerce, or that favors in-state economic interests over out-of-state interests, is

5    generally invalid per se.  *Id.* at 579.  Most regulations found to conflict with the

6    dormant Commerce Clause are found to discriminate in one of these ways.  *See*

7    *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148.

8    Second, although a statute that regulates evenhandedly and has only indirect

9    effects on interstate commerce generally does not offend the dormant Commerce

10   Clause, in a limited class of these cases the Supreme Court has applied the "*Pike*

11   test," in which it examines "whether the State's interest is legitimate and whether

12   the burden on interstate commerce clearly exceeds the local benefits."  *Brown-*

13   *Forman Distillers Corp.*, 476 U.S. at 579 (citing *Pike v. Bruce Church, Inc.*, 397

14   U.S. 137, 142 (1970)).

15   As set forth below, the TAA survives Commerce Clause challenge because it

16   is not discriminatory and it is designed to regulate commerce within California and

17   has only incidental out-of-state effects.  And while the *Pike* test does not apply, it

18   would in any event be satisfied.

19   **B.    The TAA Does Not Discriminate Against Interstate Commerce.**

20   On its face, the TAA acts "evenhandedly," with at most "incidental impacts on

21   interstate trade."  *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 731

22   F.3d, 843, 846 (9th Cir. 2013) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336

23   (1979)).  Like many licensing statutes, the TAA requires a license to engage in

24   certain activities:  the "procuring, offering, promising, or attempting to procure

25   employment or engagements for an artist or artists."  Cal. Lab. Code § 1700.4; *see*

26   *id.*, § 1700.5 (requiring license).  But anyone who agrees to comply with the TAA's

27   requirements can obtain a license, whether or not they are physically located in

28   California.  In fact, many TAA licensees are not located in California.  *See* RJN,

1  Ex. J (licensees in Arizona, Florida, Massachusetts, New York, Tennessee, and

2  Texas); *see also* RJN, Ex. K (application requiring applicants to list the city, *state*,

3  and zip code of their application address); *Nat'l Conference of Pers. Managers*,

4  2015 WL 4873541, at \*7-\*8, *aff'd*, 690 F. App'x 461 (9th Cir. Apr. 25, 2017)

5  (dismissing Commerce Clause claim).

6      A "statute that treats all private companies exactly the same does not

7  discriminate against interstate commerce." *Ass'n des Eleveurs de Canards et*

8  *d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (quotation omitted).

9  Regardless of location, all prospective licensees are treated exactly the same, which

10  does not violate the dormant Commerce Clause. *See id.*; *Indep. Training &*

11  *Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1038

12  (9th Cir. 2013) ("All apprenticeship programs seeking recognition must meet the

13  test, regardless of where those programs, or the sponsoring entities, are located.").

14  Anyone who wants to procure employment for artists in California must obtain a

15  license, but anyone can obtain a license.  There is no discrimination based on

16  residency.

17      **C.  The TAA Does Not Operate Extraterritorially.**

18      Though Siegel does not differentiate between various strands of Dormant

19  Commerce Clause doctrine, much of his argument appears to be an allegation that

20  the TAA unlawfully regulates extraterritorially. *See* Compl. ¶¶ 56-66; *Sam Francis*

21  *Found. v. Christies*, 784 F.3d 1320, 1323-24 (9th Cir. 2015) (en banc) (invalidating

22  California statute that "facially regulates a commercial transaction that takes place

23  wholly outside of the State's borders") (citations omitted).  This allegation fails

24  because, like other licensing statutes, the TAA regulates only conduct—

25  specifically, the "engag[ing] in or carry[ing] on the occupation of a talent

26  agency"—that has some connection to California, not transactions that occur

27  wholly outside of California's borders.  Cal. Lab. Code § 1700.5.

28

1    To the extent the TAA regulates *California residents* who engage in the

2    procurement of employment for artists (even if some aspects of the transaction

3    occur outside California), such regulation is permissible because "a state may

4    regulate commercial relationships 'in which at least one party is located in

5    California.'" *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th

6    Cir. 2015) (citing *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219,

7    1224 (9th Cir. 2003)).  Just as the California Bar may discipline a California lawyer

8    who commits misconduct in another state (*see, e.g.*, Cal. Bus. & Prof. Code §

9    6049.1), so too the Constitution does not prevent California from forbidding

10    unlicensed California managers from helping artists get work outside of California.

11    Likewise, to the extent that the TAA regulates out-of-state residents who

12    engage in procurement within California, "even when state law has significant

13    extraterritorial effects, it passes Commerce Clause muster when . . . those effects

14    result from the regulation of in-state conduct." *Chinatown Neighborhood Ass'n*,

15    794 F.3d at 1145 (citations omitted).  "[T]here is nothing unusual or

16    unconstitutional per se about a state or county regulating the in-state conduct of an

17    out-of-state entity when the out-of-state entity chooses to engage the state or county

18    through interstate commerce." *Pharm. Research & Mfrs. of Am. v. Cnty. of*

19    *Alameda*, 768 F.3d 1037, 1043-44 (9th Cir. 2014).  Just as California can regulate

20    sellers of shark fins (*Chinatown Neighborhood Ass'n*), sellers of foie gras (*Ass'n*

21    *des Eleveurs de Canards*), and prescription drug manufacturers (*County of*

22    *Alameda*) who elect to engage in business in California, California can regulate

23    individuals who engage in the business of talent agencies in California.

24    A 2006 Labor Commissioner decision illustrates the jurisdictional reach—and

25    limits—of the TAA.  *See* RJN, Ex. L (*James v. Thompson Mgmt.*, Case No. TAC

26    17-03 (Apr. 25, 2006)).  In *James*, a Pennsylvania personal manager, who was not

27    licensed as a talent agent in California, and an actor signed a management

28    agreement under which the actor (James) agreed to pay his manager a 15%

19

commission on his gross earnings. *Id.* at 2. The personal manager successfully obtained a television role for James in New York. *Id.* After James moved to California, he petitioned the Labor Commissioner to void the contract. *Id.* at 3.

The Labor Commissioner declined to do so, based on the lack of jurisdictional contacts with California. *Id.* The Labor Commissioner found no showing that the personal manager had "business interest or relations with California or that it conduct[ed] business in California on a regular and continual basis." *Id.* "Nor was there evidence that" the manager "came out to California for the purpose of submitting petitioner to casting calls or other employment or engagements." *Id.* Rather, the only possible connection to California was that "on one occasion," the personal manager used a telephone or facsimile to attempt to procure work for the actor in California. *Id.* at pp. 4-5. The Labor Commissioner found that this isolated incident was not enough conduct in California to subject the personal manager to California's jurisdiction. *Id.* Therefore, it refused to void the personal management contract. *Id.*; *see also* RJN, Ex. M (*Breuer v. Top Draw Entm't, Inc.*, Case No. TAC 18-95 at 4 (July 18, 1996)) (applying jurisdictional analysis).

Siegel raises the specter of the Labor Commissioner interfering with contracts that have no connection with California, *see* Compl. ¶ 63, but he does not plausibly allege that such extra-territorial reach occurs. The decisions cited in the complaint do not support Siegel because in neither *Baker v. Bash* nor *Robi v. Wolf* was the jurisdiction of the Labor Commissioner questioned; neither Bash nor Wolf raised the issue, and there is no indication that either matter lacked a sufficient nexus to California for it to be adjudicated by the Labor Commissioner. *See* Compl. ¶¶ 58-61; RJN, Exs. N (*Baker*), O (*Robi*).

As *James* illustrates, because the TAA does not "attempt to regulate transactions conducted wholly out of state" or require other states "to adopt California standards," "it is not an "impermissible direct regulation of extraterritorial conduct." *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146. Only

20

1   transactions with some connection to California will fall within the Labor

2   Commissioner's jurisdiction.

3   **D.   *Pike* Balancing Is Not Required, but Even if It Were, It Weighs
       in Favor of Validity.**

4

5   Because the TAA neither discriminates against interstate commerce nor is an

6   impermissible extraterritorial regulation, Siegel must plausibly allege that any

7   incidental burdens on interstate commerce caused by the TAA are clearly excessive

8   in relation to the putative local benefits. *See Pike*, 397 U.S. at 142. Siegel has

9   failed to meet this burden.

10      **1.   The TAA Does Not Place a Substantial Burden on
              Interstate Commerce.**

11

12  "[A] state regulation does not become vulnerable to invalidation under the

13  dormant Commerce Clause merely because it affects interstate commerce." *Nat'l*

14  *Ass'n of Optometrists & Opticians*, 682 F.3d at 1148. Rather, "[a] critical

15  requirement for proving a violation of the dormant Commerce Clause is that there

16  must be a *substantial burden* on *interstate commerce*." *Id.* (emphasis in original).

17  Such "significant burden[s]" generally involve "inconsistent regulation of activities

18  that are inherently national or require a uniform system of regulation." *Id.*

19      **a.   The TAA Does Not Regulate Conduct that Is
              Inherently National or Requires a National Regulatory
              Scheme.**

20

21  Regulation of talent agencies is not an "inherently national" matter that

22  requires a "uniform system of regulation." *Nat'l Ass'n of Optometrists &*

23  *Opticians*, 682 F.3d at 1148. Some states elect to regulate the activities of those

24  who procure employment for artists. *See* Cal. Lab. Code §§ 1700 *et seq.* (the

25  TAA); N.Y. Gen. Bus. Law §§ 170-191 (regulating "agency" representation of

26  "artists"); Fla. Stat. §§ 468.401-468.415 ("Talent Agencies"); 225 Ill. Comp. Stat.

27  515/0.01 *et seq.* (analogous scheme to New York's). Other states do not. *See, e.g.*,

28  Tex. Acts 2011, 82nd Leg., ch. 565 (H.B. 3167) (repealing chapter 2105 of Texas's

1    Occupations Code, which had regulated "Talent Agencies"); Paul Lukacs, *How*

2    *New York and Tennessee Regulate Talent Agencies*, 14-Fall Ent. & Sports Law. 15,

3    16 (1996) (in 1996, Tennessee "ceased licensing employment and talent agencies").

4          Such state-by-state professional licensing requirements are quintessential

5    issues of local concern that do not involve a national system of regulation. *See*

6    *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) (recognizing states'

7    "compelling interest in the practice of professions within their boundaries" and their

8    "broad power to establish standards for licensing practitioners"); *Gunn v. Minton*,

9    133 S. Ct. 1059, 1068 (2013) (the states have "a special responsibility for

10   maintaining standards among members of the licensed professions") (citing *Ohralik*

11   *v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978)).  Just as states are free to

12   regulate optometrists, lawyers, accountants, real estate agents, general contractors,

13   and painters who operate within their borders without running afoul of the

14   Commerce Clause, there is nothing "inherently national" about the talent agent

15   business. *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148; *see*

16   *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147 (California's Shark Fin Law did

17   not "interfere with activity that is inherently national," but regulated "legitimate

18   matters of local concern").

19                       **b.    The TAA Does Not Burden Interstate Commerce.**

20         Nor has Siegel plausibly alleged that the TAA imposes any burden on

21   interstate commerce, let alone one that is substantial.  At most, Siegel alleges that

22   the TAA prevents *unlicensed* individuals from procuring employment for artists

23   (either unlicensed California residents or unlicensed out-of-state residents operating

24   in California). *See* Compl. ¶¶ 60 ("Bash would have had to have added a licensed

25   agent into the transaction"), 61-62 (requiring unlicensed managers to "enlist[] a

26   licensed talent agent to ensure the legality of the transaction" would be an

27   "unconstitutional burden to interstate commerce").  But the point of the dormant

28   Commerce Clause is to "protect[] the interstate market, not particular interstate

firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978); *see also Nat'l Optometrists*, 682 F. 3d at 1152 & n.11 ("the dormant Commerce Clause does not protect a particular company's profits"). Like any licensing regime, in any state, the TAA authorizes only licensed individuals to engage in certain professional conduct and prohibits unlicensed individuals from engaging in the same conduct. Though it necessarily results in shifting "business" "from one interstate supplier [the unlicensed] to another [the licensed]," that does not constitute a burden on *interstate commerce*. *Yakima Valley*, 731 F.3d at 847-48 (citation omitted).

### 2. Because There Is No Burden on Interstate Commerce, *Pike* Balancing Is Not Required.

When a regulation "does not impose a significant burden on interstate commerce, it follows that there cannot be a burden on interstate commerce that is 'clearly excessive in relation to the putative local benefits' under *Pike*," and therefore *Pike* balancing is not required. *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1155; *see Chinatown Neighborhood Ass'n*, 794 F.3d at 1147 (because the law "does not impose a significant burden on interstate commerce, it would be inappropriate" to engage in *Pike* balancing); *Ass'n des Eleveurs de Canards*, 729 F.3d at 951-52. As demonstrated above, Siegel identifies no significant burden on interstate commerce associated with the TAA. Accordingly, the Court is not required to weigh its benefits against non-existent burdens. *See Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1155-56.

### 3. Even Under *Pike* Balancing, the TAA Serves a Legitimate Local Purpose and Its Benefits Outweigh Any Burden on Interstate Commerce.

Even if *Pike* balancing were appropriate, the benefits of the TAA would outweigh any burdens on interstate commerce. "A facially neutral statute may violate the Commerce Clause if 'the burdens of the statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational.'" *UFO Chuting*

1   *of Haw., Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (citations and

2   quotations omitted).  A statute is unreasonable or irrational when "the asserted

3   benefits of the statute are in fact illusory or relate to goals that evidence an

4   impermissible favoritism of in-state industry over out-of-state industry." *Id.*

5       The California Legislature has addressed, in various forms, the "exploitation

6   of artists by representatives" since 1913.  *Marathon*, 42 Cal. 4th at 984.  The

7   protection of California's citizens—especially young, vulnerable ones—from

8   abusive professionals—whether personal managers, lawyers, psychologists, or

9   contractors—is a legitimate and substantial state interest.  *See Am. Acad. of Pain*

10   *Mgmt. v. Joseph*, 353 F.3d 1099, 1108-09 (9th Cir. 2004) (noting California's

11   "substantial interest" in regulating professionals who interact with the public); *Nat'l*

12   *Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043,

13   1054 (9th Cir. 2000) (describing California's interest in licensing professions);

14   2009 Cal. Legis. Serv. ch. 286 (A.B. 1319) (describing, in legislative history of

15   statute related to the TAA, how talent agency contracts in the entertainment

16   industry too often "have worked a fraud, deceit, imposition, and financial hardship

17   upon the people of this state, particularly upon children and other minors . . . [and

18   how] the talent industry has a significant impact upon the economy and well-being

19   of this state").

20       By contrast, the TAA imposes minimal burdens on interstate commerce.  The

21   vast majority of personal managers' activities are not regulated by the TAA.  *See*

22   *Styne*, 26 P.3d at 349.  Only when they "procure" "employment" for "artists" does

23   California impose a modest licensing and oversight requirement.  *See* Cal. Lab.

24   Code § 1700.4 *et seq.*  Siegel has failed to plausibly allege that the burden of this

25   requirement—which is indistinguishable from other professional licensing

26   requirements—clearly exceeds its local benefits.

27   / / /

28   / / /

24

1

## CONCLUSION

2      For these reasons, the Labor Commissioner requests that the Court grant her

3  motion and enter judgment on the pleadings in her favor.

4

5

Dated:  November 30, 2017                              Respectfully submitted,

6
                                                       XAVIER BECERRA
7                                                      Attorney General of California
                                                       ANTHONY R. HAKL
8                                                      Acting Supervising Deputy Attorney
                                                       General
9

10                                                     /s/ John W. Killeen
                                                       JOHN W. KILLEEN
11                                                     Deputy Attorney General
                                                       *Attorneys for Defendant California*
12                                                     *Labor Commissioner Julie Su*

13  SA2017109057
    12897281.docx
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY OVERNIGHT COURIER

Case Name:    **Siegel, Rick v. Julie Su**


No.:          2:17-cv-07203 CAS (SSx)


I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550.

On November 30, 2017, I served the attached **CALIFORNIA LABOR COMMISSIONER JULIE SU'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS (FED. R. CIV. P. 12(C))** by placing a true copy thereof enclosed in a sealed envelope with the **GOLDEN STATE OVERNIGHT**, addressed as follows:


Rick Siegel
22971 Darien Street
Woodland Hills, CA 91364

*Pro per*



I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on November 30, 2017, at Sacramento, California.


| Tursun Bier | */s/ Tursun Bier* |
|:---:|:---:|
| Declarant | Signature |


SA2017109057
12896262.docx