Rick Siegel
~~3379 Tareco Drive~~ 22267 Ventura Blvd #451
~~Los Angeles, CA 90068~~ Woodland Hills CA 91364
323.512.2600  phone
323.864.7474  mobile
~~ricksiegel@gmx.com~~ rick@marathonentco.com
Acting pro per

FILED

2017 DEC -4  PM 2: 49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

|  |  |
|---|---|
| **RICK SIEGEL,** | ) CASE NO.  2:17-CV-07203 CAS (SSX) |
| Plaintiff | ) |
|  | ) **RICK SIEGEL'S NOTICE OF** |
| vs. | ) **MOTION AND MOTION FOR** |
|  | ) **SUMMARY JUDGMENT**, Separate |
|  | ) Statement of facts and Declaration |
| **JULIE SU,** in her official capacity as the | ) of Rick Siegel |
| California Labor Commissioner | ) |
|  | ) |
| Defendant. | ) Feb12, 10AM |
|  | ) Dept 8D |
| _____ | ) |
|  | ) |
|  | ) |
|  | ) |

TO ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE that on February 12, 2018 at 10:00 a.m. or as soon thereafter as the matter can be heard in Department 8D of the above-entitled Court, Plaintiff Rick Siegel ("Siegel") will, and hereby does, move for summary adjudication for an order granting injunctive and declarative relief related to the wrongful enforcement and unconstitutionality of the Talent Agencies Act based on the claims set forth in Rick Siegel's complaint Specifically, Marathon seeks a judgment that there is no triable issue of fact as to the following claim:

**Issue No. 1:** No triable issue of material fact exists regarding how the Act is interpreted and enforced. Both sides agree that the Defendant is meting out remedies when she finds an individual or entity has procured employment for an artist without getting a license. The attached memorandum of points and authorities shows unequivocally that there is a mountain of state, administrative and federal law that has been uniformly found since 1914 that bars such actions. If a statute does not have a penalty provision, no adjudicative body has the authority to do the legislative task of creating a remedy. California goes further; it has expressly ruled that an administrative agency cannot create a remedy that its legislature has not codified.

**Issue No. 2:** The memorandum also, in no small part using the Defendant's own words as stated in her determinations noting the impossibility to understand what is and is not lawful, show that the Act is unconstitutionally vague on its face and surely in its arbitrary and inconsistent enforcement.

**Issue No. 3:** The memorandum also clearly shows the unconstitutionality puts a unconstitutional burden to interstate commerce on its face and as applied; giving wrongful protections and an irrational monopoly to the occupation of talent agent, to the detriment to all others concerned, including the artist that must pay an in-state agent when an out-of state agent gets them a job in a different domicile.

The motion for summary adjudication as to these issues is based on this Notice, the accompanying Memorandum of Points and Authorities, the Separate Statement of Undisputed Facts, the Declaration of Richard Siegel, the pleadings and papers on file in this

action, and upon the argument of counsel at the hearing. As it establishes without material controversy, save the Defendant's stubborn reliance over a Court of Appeals ruling over the four California State Supreme Court cases the Appeals case either intentionally or mistakenly misinterpreted, a choice that cannot be backed up by precedent or common sense, it is clear Plaintiff is entitled to judgment in its favor as a matter of law.

Dated: December 4, 2017                              Respectfully submitted,

                                                    Rick Siegel
                                                    Pro Per

2

**FEDERAL CASES**

Chevron, USA v. NRDC, 467 U.S. 837, 844 -845 (1984)     Pg. 19

City of Chicago v. Morales, 527 U.S. 41 (1999)     Pg. 18

Foster-Fountain Packing Co. v. Haydel, 278 U. S. 1     Pg. 27

Grayned v. City of Rockford, 408 U.S. 104 (1972)     Pg. 18

Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990 (9th Cir. 2010)     Pg. 17

Kolender v. Lawson, 461 U.S. 352 (1983)     Pg. 18

Lambert v. California 355 U.S. 225, 228 (1957)     Pg. 21

Pike v. Bruce Church Inc, 397 U.S. 137, 142 (1970)     Pg. 25, 26-27

Shaffer v. Heitner, 433 U.S. 186, 217 (1977)     Pg. 1

Smith v. Gougen, 415 U.S. 566 (1972)     Pg. 18

Toomer v. Witsell, 334 U. S. 385 (1948)     Pg. 27

U.S. v. Evans, 333 U.S. 483, 495 (1948)     Pg. 25

**CALIFORNIA STATE CASES**

Buchwald v. Superior Court, 254 Cal. App. 2d 347 (1967)     Pg. 2, 22-23

Dyna-Med. v. Fair Emp. & Housing Comm., 43 Cal. 3d 1385 (1987)     Pg. 1, 22

Gatti v. Highland Park Builders, Inc., 27 Cal.2d 687, 690. (1946)     Pg. 5

Grubb & Ellis Co. v. Bello, 19 Cal.App. 4th 231 (1993)     Pg. 21

Loving & Evans v. Blick, 33 Cal. 2d 603 (1949)     Pg. 1, 23-24

Marathon v. Blasi, 42 Cal. 4th 974 (2008)     Pg 1, 2, 10, 14, 15, 20, 21, 18, 23

Michael H. v. Gerald D, 191 Cal.App.3d 995 (1987)     Pg. 10

Morris v. Williams, 67 Cal 2d 733 (1967)     Pg. 22

Morrison v. State Board of Education, 1 Cal. 3d 214 (1969)     Pg. 19

Pacific Bell LLC v. Public Utilities Comm., 140 Cal. App. 4th 718 (2006)     Pg. 18

Raden v. Laurie, 120 Cal. App. 2d 778 (1953)     Pg. 2

Severance v. Knight-Counihan Co., 29 Cal.2d 561 (1947)     Pg.1, 23, 24

Smith v. Bach, 183 Cal. 259 (1920)     Pg. 1, 23-24

Wachs v. Curry, 13 Cal. App. 4th 616 (1993)     Pg. 14, 17

Wolff v. Fox, 68 Cal. App. 3d 280 (1977)     Pg. 18

Wood v. Krepps, 168 Cal. 382 (1914     Pg. 1, 2, 6, 23

## NEW JERSEY STATE CASES

State v. Fair Lawn Service Center, 20 N. J. 468, 473 (NJ 1956)   Pg. 1

## CALIFORNIA STATE STATUTES

CA Labor Code
           § 1700 et al   Pg. 1
           § 1700   Pg. 8, 9
           § 1700.4 (a)   Pg. 11-14
           § 1700.29   Pg. 2
CA Business & Professions Code (BPC)
           § 2903   Pg. 12-13
           § 5034   Pg. 13
           § 5050   Pg. 13
           § 5051   Pg. 13
           § 5615   Pg. 11
           § 6126   Pg. 20
           § 6126.3(a)   Pg. 20
           § 6126.5   Pg. 20
           § 7031   Pg. 21
           § 7802.1   Pg. 12
           § 7803   Pg. 12
           § 7804   Pg. 12
           § 10136   Pg. 20
           § 10139   Pg. 20
Cal. C. Civ. Pro. § 437c(b)   Pg. 10
Cal. C. Civ. Pro. § 437c(c)   Pg. 10

## TALENT AGENCIES ACT CASES

Pamela Anderson v D'Avola, TAC 63-93)   Pg. 15

Anita Baker v Bash, (TAC 12-96)   Pg. 26

Blasi v. Marathon Entertainment, (TAC 15-03)   Pg. 9, 12

Behr v Dauer And Assoc. (TAC 00-21)   Pg. 8, 9

Chapman v. Krutonog, TAC 3351   Pg. 24

Thomas Hayden Church v. Brown (1994) TAC 52-92   Pg. 9

Creative Artists Group v. O'Dell (TAC 26-99)   Pg. 8, 15

Gittleman v Karolat, TAC 24-02   Pg. 9, 14

Macy Gray v. Lori Leve Management (TAC 18-00)   Pg. 19-20

Arsenio Hall v. X Management (TAC 19-90)   Pg. 14 FN

Jewel v. Inga Vainshtein (TAC 21-00)                                    Pg. 9

ICM Partners v. James Bates, TAC-22649                                  Pg. 24

Makana v. Bunch, TAC-37059                                             Pg. 24

Marathon Entertainment v. Rosa Blasi, TAC 15-03                        Pg. 12, 13

Park v. Deftones (TAC 9-97)                                            Pg. 20

Parker Posey v. Lila Richardson (TAC 7-02)                            Pg. 9

Richard Pryor v Franklin, TAC 17 MP114 (1982)                         Pg. 18

Wesley Snipes v. Robinson (TAC 36-96)                                 Pg. 8

Solis v. Blancarte, TAC-27089 (2013)                                 Pg. 19

Todd v. Meagher TAC 2012-1341                                         Pg. 16

Tool v. Larrikin Management (TAC-35-01)                              Pg. 9

Transeau v. 3 Artist Mgmt., (TAC 2008-7306)                          Pg. 9

## LAW REVIEW ARTICLES

*Don't Bite The Hand That Feeds: A Call For A Return To An Equitable
    Talent Agencies Act Standard*, Hastings Comm. & Ent. Law Journal  Pg. 7

*Due Process Limitations on Occupational Licensing*, Virginia Law Review  Pg. 10-11

*Reconciling the Controversies Surrounding Lawyers, Managers, and Agents
    Participating in California's Entertainment Industry*,
    Pepperdine Law Review                                             Pg. 7

*Regulation of Attorneys Under California's Talent Agencies Act;
    A Tautological Approach to Protecting Artists*; CA. Law Review    Pg. 7

*Taking Away an Artist's "Get Out of Jail Free" Card: Making Changes
    and Applying Basic Contract Principles to California's
    Talent Agencies Act*, Pierce Law Review                           Pg. 7

*The Personal Manager In The California Entertainment Industry*
    Southern California Law Review, Vol. 52:37 (1979)                 Pg. 7

## STATE REPORTS

Report of the CA Entertainment Commission, Pg. 15                      Pg. 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        INTRODUCTION AND SUMMARY OF ARGUMENT

The California Talent Agencies Act (CA. Labor Code §1700 et seq., "TAA," "the Act"), "provides no remedy for its violation." <u>Marathon Entertainment v. Rosa Blasi</u>, 42 Cal 4th 974, 991 (2008)

"Where a statute fails to provide a penalty it has been **uniformly held** that it is beyond the power of the court to prescribe a penalty." <u>State v. Fair Lawn Service Center</u>, 20 N.J. 468, 473 (NJ 1956). No exceptions; uniformly held.

The U. S. Supreme Court noted in <u>Shaffer v. Heitner</u>, 433 U.S. 186, 217 (1977), that such notice is needed irrespective of whether the statute is of a criminal or civil nature: "The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against 'judgments without notice' afforded by the Due Process clause [citation] is implicated by civil penalties."

In <u>Dyna-Med, Inc. v. Fair Employment & Housing Comm.</u>, (1987) 43 Cal. 3d 1385, the CA. Supreme Court makes it clear that the California Labor Commissioner has no latitude to find what she sees as justifiable retribution for the remedy-free TAA: "An administrative agency cannot by its own regulations create a remedy which the Legislature has withheld. 'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.'" <u>Id</u>. at 1388.

Between 1914 and 1949, the California Supreme Court made four rulings as to when adjudicators have the right to infringe on the contractual rights of someone who had allegedly acted unlawfully, each time finding that contractual rights were not to be disturbed should there not be "any provision therein (the statute) indicating in the slightest that this failure was intended to affect in any degree the right of contract." <u>Wood v. Krepps</u>, 168 Cal 382, 386 (1914). Also see <u>Smith v. Bach</u>, 183 Cal. 259, 262 (1920); <u>Loving & Evans v. Blick</u>, 33 Cal. 2d 603, 608-609 (1949), and <u>Severance v. Knight-Counihan Co.</u>, 29 Cal. 2d 561, 568 (1947).

Yet despite these singular holdings, personal managers, producers, publicists and lawyers run the risk of having their contractual rights affected by Labor Commission (LC) enforcement of the Talent Agencies Act (CA. Labor Code §1700 et seq., "TAA," "the Act"), leaning on <u>Buchwald v. Superior Court</u>, Cal. App. 2d, 254, 257: Since the clear object of the Act is to prevent improper persons from becoming artists] and to regulate such activity for the protection of the public, a contract between an unlicensed artists' manager and an artist is void."

At its core, this lawsuit is about the Talent Agencies Act has no "provision therein indicating that this failure [to be licensed] was intended to affect in any degree the right of contract," (<u>Wood</u> Supra), and how <u>Buchwald</u> relied up but whether intentionally, with malice, or simply mistakenly interpreted <u>Wood</u> and the other three State Supreme Court cases. It found that adjudicators, without any provision therein the TAA indicating the failure to be licensed was intended to give authority to affect one's contractual rights, did, wrongly, have the authority to do so.

When, on December 19, 2013, the Los Angeles Daily Journal published an article summarizing the above, it created the appropriate title for the piece: "A Generation of Incorrect Talent Agencies Decisions."

First enacted to protect ingénues from employers masquerading as job counselors, the TAA is now, quoting CA. Supreme Court Justice Katherine Werdegar, "a blunt and unwieldy instrument … of little use to unestablished artists … and may well punish most severely those managers who work hardest and advocate most successfully for their clients, allowing the clients to establish themselves, make themselves marketable to licensed talent agencies, and be in a position to turn and renege on commissions." <u>Marathon v. Blasi</u> 42 Cal. 4th 974 (2008).

The TAA has been derided by courts, attorneys and in law review articles as confounding, counter-productive and draconian. The LC is empowered via Lab. Code 1700.29 to adopt, amend and repeal inconsistent rules and regulations, yet stubbornly enforces the Act in an arbitrary, unconstitutional manner; without regard for due process of law, rational basis or equal protection under the law.

2

If you prick a personal manager, they will bleed. If a manager does work for someone and that person withholds owed compensation, they should be able, as all other Americans, to use the judicial system to get whole. As detailed hereinafter, there is no more a prohibition on unlicensed procurement for artist than there is on doing accounting work without being a CPA, or using psychological principals to influence someone's behavior without having a psychologist's license. In all other licensing schemes, the defining activity of the profession is only reserved for licensees when that notion is expressly stated in the statute.

The unconstitutional facial and as applied vagueness of the TAA has compromised law-abiding attorneys, interfered with producers, disrupted the ethical business dealings of promoters and publicists, and put a pall over the occupation of personal management, ruining generations of businesses and the lives of personal managers; all to the detriment of the artist community the Defendant is supposed to be protecting, for the benefit of, as Justice Werdegar intimated, the greedy. This court now has an opportunity, in all candor a responsibility, to put an end to these affronts to justice.

## II.   BACKGROUND

### A.   These Statutes Were Created to Separate Employers and Employment Counselors

The Artists' Managers[1] Act was enacted in 1913. The law was codified to stop those who serve as employment counselors for artists also being the employers of artists. It was a response to owners of burlesque halls and bordellos masquerading as talent agents to lure ingénues into their employ.

The Legislature entrusted the Labor Commission to administer and police the Act. Over time, though without legislative directive, the administrative agency started to veer from the legislative intent of keeping employers from also pretending to be employment counselors and see its job as keeping the procurement of jobs for artists as the exclusive purview of licensees. Its focus became keeping 'improper persons'

---

[1] Talent agents were originally called 'artists managers.'

3

from being agents, despite the statutes clearly aimed to regulate what people can and cannot do one they made the choice to become agents. There is no legislative history the Legislature ever considered requiring tests, apprenticeships, schooling or proof of competency as a requisite to getting or keeping a license a license.

This change was first visible in <u>Raden v. Laurie,</u> 120 Cal. App. 2d 778 (1953), when the LC filed an Amicus Brief claiming a personal manager had used "sham and subterfuge designed to conceal" (<u>Id.</u> at 782) his acting as an unlicensed talent agent.

Conversely, there is no evidence the Commissioner in any way objected when the MCA Talent Agency started its production entity in 1952, after the Screen Actors Guild President, soon after his agent procured for him a $1,000,000 contract fronting for GE, gave his agency, MCA a waiver from its rule banning agents from having production entities.[2] The Plaintiff could find no evidence the Commissioner ever got involved in this obvious violation of the true rationale for these statutes.

Even in 1962, when U.S. Attorney General Robert Kennedy required MCA to either tether its production entity or talent agency component, which it did by giving up its agency business, or otherwise face legal action for antitrust violations, there is no evidence of Labor Commission interest or involvement.

The Labor Commission again did nothing during the 1990's when personal management firms like Brillstein-Grey (Columbia/Sony) and 3 Arts (FOX) made eight-figure deals to serve as production entities, allowing them to employ their clients in TV series they produced (I.e., ACCORDING TO JIM and JUST SHOOT ME.) These production companies were employment counselors *and* employer, just as MCA was a generation before. Yet again the Labor Commission stood down.

And today, as the major talent agencies like CAA and WME merge with, buy and control production entities that produce films, television and sporting events, thus

---

[2] "The Screen Actors Guild, under [Ronald] Reagan's leadership, grants Reagan's agency, MCA, an immensely valuable "blanket waiver" of its rule prohibiting agents from being producers too. This allows MCA, and no other agency, to move aggressively into the production of television shows while keeping its base as a talent agency." NY Review of Books review of *Dark Victory: Ronald Reagan, MCA, and the Mob,* http://www.nybooks.com/articles/1987/01/15/when-reagan-was-reagan/

again blurring the lines between employment counselors and employers, the Labor Commissioner remains on the sidelines.

Instead, as it is enforced today by the LC, the TAA creates: (1) confusion because of the lack of clarity as to who is being regulated, what is being regulated, and what the penalties are for violating the regulations; (2) a monopolistic tool for talent agents to use over other representatives whom cannot obtain talent agency licenses for if they did, it would create impasses with the Writers, Actors and Directors Guilds' by-laws that limits total agency compensation to 10% cumulatively; and (3), an unconstitutional barrier for California-based artists that wish to employ out-of-state representatives to find them out-of-state work.

## B.  There Is No Rational Basis For The Labor Commission's Enforcement Of Unlicensed Procurement

In the early 20th Century there was an understandable concern that ingénues could be wrongfully lured into lurid opportunities. Notwithstanding the morality, so many post-adolescents today choose those paths: the days of 'luring' an ingenue are long over: those looking to hire strippers or actors for adult films need only place an ad.

While the worries remain of those in power taking advantage of someone vulnerable, those worries also befall those looking for work in restaurants, corporate environs and law firms. There is no rational basis to give artists special protections.

There is zero rational basis to the Labor Commission's enforcement. There is no legitimate government interest in penalizing those who have by their actions been of service in others making money and changing their careers for the better. The artists who file a petition to initiate a TAA controversy for unlicensed procurement are not doing so because there has been a failure or they have been lessened, compromised or ripped off. Just the opposite, these actions are taken because the artist has found gainful employ and now wishes not to pay for the help they were given to attain that success. No law is to be used as an "unwarranted shield for the avoidance of a just obligation," Gatti v. Highland Park Builders, Inc., 27 Cal.2d 687, 690. (1946).

5

This court previously ruled that unlike all other state and Federal statutes, the severability statutes in the Civil Code provide the needed notice for voidance. Finding that statutes in the Civil Code gives authority to void a contract for the TAA licensing scheme in the Labor Code without any notation in the Act to direct citizens to the Civil Code statutes is the very epitome of unconstitutionally vague; no ordinary citizen would know to look there.

That is not the only issue: if no penalty provision is needed therein the Act itself, despite what is expressly stated in *Wood*, it creates surplusage questions: why do all other licensing statutes have voidance provisions if the existence of the Civil Code severability statutes is enough? And if all other statutes need penalty provisions before contractual rights can be affected, as the law uniformly holds, why are unlicensed talent representatives not worthy of the protection of an equal amount of notice? Should the court wish to affirm that finding, Plaintiff beseeches the Court to include answers to these questions in that ruling.

As employment procurement does not interfere with the Act's intended protections; under current enforcement of the Act, artists are unjustly enriched and given a tool to avoid contractual commitments; and as unlicensed procurement only benefits, rather than harms the artist, the prohibition against unlicensed procurement does not satisfy due process standards required to justify state regulation. There is no nexus between the regulation and the harm: the Government is not interested in keeping artists from getting better work; the harm the Act seeks to protect through its words has nothing to do with the act of procurement.

## C.     There Is A Disconnect Between The Labor Commissioner's Interpretation Of The Act And The Act As Written.

The TAA, or more specifically, the LC's interpretation of the Act and how it focuses on policing unlicensed procurement without clear guidelines as to what is prohibited, has been an ongoing subject of critical commentary. This was the first Law Review article written about the passage of the Act:

"The Talent Agencies Act presents a peculiar situation — **no legislative intent can be discerned regarding personal managers and when they need licenses to procure employment for their clients. ...** ... Two questions that remain unresolved after passage of the TAA are when, if ever, 'procurement activity' is permissible by an unlicensed 'talent agent,' and what quantum of activity constitutes 'procurement activity.'" *The Personal Manager in The California Entertainment Industry,* Southern California Law Review, Vol. 52:37 (1979) Neville L. Johnson and Daniel Webb Lang.

Even after the State created the CA. Entertainment Commission in 1982, which led to the Legislature making amendments to the Act in 1986, the Act remained unclear:

"Ambiguous language renders the Act inherently unjust because it does not give fair and adequate warning of the type of activity that constitutes procurement and it does not provide a consistent standard that the Labor Commissioner can apply to determine whether an individual has violated the Act." *Regulation of Attorneys Under California's Talent Agencies Act; A Tautological Approach to Protecting Artists*; CA. Law Review, Vol. 80, Is. 2, pg. 492 (1992) James M. O'Brien III.

"The Legislature fostered confusion by failing to stipulate precisely which individuals and specific activities fall beneath the umbrella of the new licensing requirements." *Don't Bite The Hand That Feeds: A Call For A Return To An Equitable Talent Agencies Act Standard*, Hastings Comm. & Ent. Law Journal, 223, 233 (1997) Chip Robertson.

"The TAA, the TAA's predecessors and amendments, the CEC, California courts, and the Labor Commissioner have each failed to define precisely which activities constitute 'procurement.'" *Reconciling the Controversies Surrounding Lawyers, Managers, and Agents Participating in California's Entertainment Industry*, Pepperdine Law Review, Vol. 28, 381 (2001) Gary E. Devlin.

"[I]nconsistent interpretations by the Labor Commissioner and courts, [have created] an environment where no one is quite sure what is allowed. The ambiguity leaves unlicensed personal managers unfairly exposed to staggering potential liability." *Taking Away an Artist's "Get Out of Jail Free" Card: Making Changes and Applying Basic Contract Principles to California's Talent Agencies Act*, Pierce Law Review, Vol. 8, No. 3 (2010) Gregory Albert.

No one, save the Labor Commissioner and some attorneys who make representing artists trying to void their management contracts a cottage business, has

ever tried to defend the Act's clarity. The Defendant has been unsuccessful in that effort. Quoting Marathon v. Blasi, 42 Cal. 4th 974, 989: "We note we are not called on to decide, and do not decide, what precisely constitutes "procurement" under the Act. The Act contains no definition, and the Labor Commissioner has struggled over time to better delineate which actions involve mere general assistance to an artist's career and which stray across the line to illicit procurement."

Lab. Code 1700.4(a) defines a talent agent as one who efforts to procure employment for artists, but the Act does not explicitly bar non-licensees from such procurement efforts. It is a basic legal maxim that which is not prohibited is allowed, but instead the LC arbitrarily interprets, and courts have subsequently accepted, that 1700.4(a) restricts lawful procurement of employment to artists to licensees.

For decades, the Labor Commissioner has ruled that sending out sales materials to a potential talent buyer is a violation of CA. Labor Code 1700.4 (a). (See, for example, Marathon v. Blasi, TAC 15-03, Behr v. Dauer and Associates (TAC 00-21).) Yet in a brief recently submitted to the Ninth Circuit, the Labor Commissioner unequivocally states: "**Personal managers do not need a license to send out resumes, photographs, videotapes or written materials for an artist.**" (Exhibit 1, Appellee Principal Brief in National Conference of Personal Managers v. Julia Su et al.; Pg. 28.) There has been no change in the law, so either this is an arbitrary, unexplained change, or evidence the Labor Commissioner has no more of a clue as to what is a violation is than the numerous individuals who have been compromised by the TAA's vagueness.

In Wesley Snipes v. Delores Robinson (TAC 36-96) and Creative Artists Group v. Jennifer O'Dell (TAC 26-99), the Labor Commissioner determined the "requirements of the [Safe Harbor] statute cannot be construed to call for a game of 'Mother May I?' every time an artist manager takes some action during a long-term relationship … To find otherwise would be to ignore the realities of the day to day life in the [entertainment] industry."

More often, however, the Labor Commissioner has found it unlawful for a personal manager to proactively procure even once without proof of a request from a licensed agent. In <u>Behr v Dauer And Assoc</u>. (TAC 00-21) and in <u>Tool v. Larrikin Management</u> (TAC-35-01), the Commissioner found the personal manager did not qualify for the Safe Harbor because the manager had called the talent agency about an opportunity, instead of the agency calling the management firm. See also <u>Transeau v. 3 Artist Mgmt.</u>, TAC 2008-7306. There was no modification in the law; the change was arbitrary and done without explanation.

In <u>Parker Posey v. Lila Richardson</u> (TAC 7-02), the Commissioner voided the contractual rights of an attorney for procuring without a license. However, in <u>Jewel v. Inga Vainshtein</u> (TAC 21-00), the Commissioner left the contractual rights of the attorney intact because Jewel only petitioned to void paying her manager commissions. There is nothing in the TAA that says the Labor Commissioner only has the authority to enforce the precepts of the Act when requested by a petitioning artist.

<u>Gittleman v Karolat</u>, TAC 24-02 holds that a "talent agency license is not required for the procurement of a guest appearance on a talk show provided the appearance does not involve the rendition of artistic services." (Id., pg. 27.) Yet a case decided almost simultaneously, <u>Blasi v. Marathon Entertainment</u>, TAC 15-03 found that this Plaintiff's procuring three talk show appearances (where the actor was not acting) violated the Act. (Id., pg. 21.)   The same facts, the same time period, and two wholly opposite rulings.

Similarly, the Labor Commissioner has arbitrarily created and later changed the harshness of the meted penalties. At first the LC uniformly required that those found to have procured employment for an artist without a license must return all commissions they had ever received. But without legislative guidance, new laws, or explanation or notice of the amended remedy, beginning with <u>Thomas Haden Church v. Ross Brown</u> (1994) TAC 52-92, found violators only had to return one year's commissions from the date of filing the petition for controversy.

In 2008, the U.S. Supreme Court ruled that the CA Labor Commissioner's long-time interpretation of § CA Labor Code § 1700.45 violated federal law, finding that if disputing parties have an arbitration clause, they do not have to go to the administrative agency for resolution. See Preston v. Ferrer, 552 U.S. 346 (2008).

The same year, the CA Supreme Court found the Defendant incorrectly interpreted and enforced the TAA on the occasions it did not consider severability when a TAA violation is found. See Marathon v. Blasi (2008) 42 Cal.4th 974.

## III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted when the moving party demonstrates "that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Cal. C. Civ. Pro. § 437c(c).) In making this determination, the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence. (Id.) Moreover, the court may rely on "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Cal. C. Civ. Pro. § 437c(b).) A summary judgment motion can expedite litigation by avoiding needless trials and "penetrate through evasive language and inept pleading and to ascertain the existence or absence of triable issues." Michael H. v. Gerald D, 191 Cal.App.3d 995, 1003 (1987) (citations omitted).)

## IV.   ARGUMENT

Interpreted in a manner that departs greatly from its intended purpose and legislative intent, enforcement of the Talent Agencies Act has no equitable justification, constitutionally offensive and is enforced in an arbitrary, indefensible and unconstitutional manner by the California Labor Commissioner.

For the enforcement of an occupational licensing scheme to pass the bar of constitutionality, there must be clear notice of: (1) who is subject to the enacted regulation; (2) what is the conduct being regulated; and (3) what are the consequences

found violators of the statute face. (See *Due Process Limitations on Occupational Licensing,* Virginia Law Review (Sept. 1973), Vol. 59, No. 6, pg. 1108.)

The Talent Agencies Act fails on two of the three.

## A.   There is Ambiguity as To What Is Being Regulated

### 1.   § 1700.4 (a) Has No Language Restricting Activity To Licensees

Marathon found that the TAA: "regulates *conduct*, not labels; it is the act of procuring (or soliciting), not the title of one's business, that qualifies one as a talent agency and subjects one to the Act's licensure and related requirements. (§ 1700.4, subd. (a).) Any person who procures employment — any individual, any corporation, any manager — is a talent agency subject to regulation." Id.at 984.

While respecting that only the upper court can change this holding, the holding is wrong. When lawmakers want a licensing statute to limit specific conduct to those with licenses, they codify statutes stating either that an activity is reserved only for licensees, or conversely prohibit non-licensees from engaging in that activity. The TAA has no such statute. In § 1700.4 (a), the legislature defined a "Talent agency" through its defining activity -- "a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists" – but nowhere in the Act is there a statute making procuring employment for an artist the exclusive domain of licensees.

CA Business & Professions Code (BPC) § 5615 defines landscape architects by noting the activities landscape architects engage in: "A person who practices landscape architecture within the meaning and intent of this article is a person who offers or performs professional services, for the purpose of landscape preservation, development and enhancement, such as consultation, investigation, reconnaissance, research, planning, design, preparation of drawings, construction documents and specifications, and responsible construction observation." And like with the TAA,

11

there is no statute inside the Landscape Architects Act making any of those activities the exclusive domain of a licensee.

Plaintiff could find no example of a gardener, landscape designer, tree trimmer, lawn maintenance specialist or swimming pool builder found to have violated the Landscape Architects Act for engaging in the above defining activities of this profession, save those who were holding themselves out as landscape architects.

BPC § 7803 defines a Geologist as "a person engaged in the practice of geology," which is defined in BPC § 7802.1 as "that science which treats of the earth in general; investigation of the earth's crust and the rocks and other materials which compose it; and the applied science of utilizing knowledge of the earth and its constituent rocks, minerals, liquids, gases and other materials for the benefit of mankind." And like with the TAA, there is no statute inside the Geologists Act making any of those activities the exclusive domain of a licensee.

Plaintiff could find no example of conservationists, mineralists, professors, engineers or others who involve themselves in earth science for engaging in the above activities that were not wrongly claiming the title of professional geologist, which is a violation of BPC § 7804.

The verbiage of BPC § 2903 (a) mirrors CA. Labor Code 1700.4 (a): "No person may engage in the practice of psychology, or represent himself or herself to be a psychologist, without a license..."

BPC § 2903 then defines the practice of psychology: "rendering or offering to render ... any psychological service involving the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior, such as principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships, and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification and hypnosis; and of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions and motivations."

Like the TAA, the Psychologists Act has no statute making any of those activities the exclusive domain of a licensee. Plaintiff could find no example of any Scientologists, who regularly engage in constructing, administering and interpreting tests of mental abilities, aptitudes, interests, etc. to affect others' behavior being found in violation of § 2903. Nor could Plaintiff find any pastor, rabbi, salesperson, life coach, teacher, trainer, doctor, nurse, physical or drug rehabilitation professional, advertising and marketing executive or any other person that use psychological principles to understand and influence the behavior of others save those calling themselves psychologists.

BPC § 5034 defines a public accountant as "any person who has registered with the [California Board of Accountancy] as a public accountant and who holds a valid permit for the practice of public accountancy.

BPC § 5050 states how, "no person shall engage in the practice of public accountancy in this state unless the person is the holder of a valid permit to practice public accountancy in this state unless the person is the holder of a valid permit to practice public accountancy..."

Like the TAA, the Accountants Act has no statute making any of those activities the exclusive domain of a licensee. Plaintiff could find no example of anyone being found to have violated that statute for engaging in any of the activities the accountant-defining activities as delineated in BPC 5051 (a–i) unless they were holding themselves out as an accountant.

If defining an occupation by its activities makes the defined activities unlawful for non-licensees, only licensees should be able to use psychological principles or create and keep business records or beautify and maintain outdoor areas or it is lawful to procure employment for artists without a license. Basic legal principles require the LC and courts to interpret the TAA as it does all other licensing schemes: that without a statute expressly reserving an activity to licensees, non-licensees can engage in an activity that defines a regulated occupation without acting unlawfully. Without that clarity, the statute is unconstitutionally vague.

13

2.      **No One Knows Exactly What Procurement Is, And Which, If Any, Activities Can Only Licensees Engage In**

Plaintiff recognizes that <u>Marathon</u> holds that CA Labor Code 1700.4 (a) limits the activity of procuring employment opportunities for artists to those with a talent agency license. However, neither Marathon nor any Court has been asked to ascertain if the TAA has clearly enough defined what 'procurement' is and is not. <u>Marathon</u> noted that, "[W]e are not called on to decide, and do not decide, what precisely constitutes "procurement" under the Act." <u>Id</u>. at 989.

Nor has any court has ever ruled on its application.  <u>Wachs v. Curry</u>, 13 Cal. App. 4th 616 (1993)[3] found that, "occupation of procuring [employment]" was not "so patently vague and so wholly devoid of objective meaning that it provides no standard at all," but on its own raised the applicability question: "***[w]hether the Act is unconstitutional as applied to plaintiffs is a question for another day***." (<u>Id</u>. at 629; emphasis supplied).

Like all laws, licensing schemes must clearly detail the line where lawful activity ends for those without the requisite license. As <u>Marathon</u> noted, the Act does not define procurement and the Defendant's rulings have been inconsistent. <u>Id</u>.

For the TAA to be constitutional as to what activities are in fact regulated, it must be clear where the line crosses from lawful career assistance to illicit procurement. As sales materials are clearly part of the sales process, can only licensees create the materials used to sell their artists to the hiring community? Is a license needed to choose the headshots, create the resumes and bios and/or edit a client's prior work to fashion a sizzle reel? There is nothing in the TAA that clarifies whether these activities, or any other activities, are reserved for licensees.

Similarly, there is nothing in the TAA that states that only licensees can send out these sales materials for an artist. Can unlicensed representatives send these materials out to some people but not to others? The TAA offers no answers to this

---

[3]   This case was <u>Arsenio Hall v. X Management </u>(TAC 19-90) when a Labor Commission controversy.

14

question. The TAA is most often compared to the State Contractors Act; in contrast, that licensing scheme expressly points out what one cannot due relevant to plumbing, construction and electrical work.

In her reply brief defending a suit brought by the National Conference of Personal Managers, The Labor Commissioner stated, "Personal managers do not need a license to "send [] out resumes, photographs, videotapes, or written materials for an artist." Exhibit 1: Pg. 28 of Appellee Principal Brief in National Conference of Personal Managers (NCOPM) v. Julia Su et al.[4]

In Marathon Entertainment v. Rosa Blasi, TAC 15-03, it was determined that submitting the sales materials in "without first being requested to do so by [Blasi's licensed talent agent]" (Id., Pg. 5, lines 20-21) and "sending out the demo tapes of petitioner … are in violation of the Act. Id., Pg. 7, lines 16-21.

Per Pamela Anderson v D'Avola (TAC 63-93), the TAA Safe Harbor provision, CA. Labor Code 1700.44 (d) "does not permit an unlicensed person to engage in any procurement activities other than 'negotiation of an employment contract.' Discussions with producers or casting directors in an attempt to obtain auditions for an artist exceed the scope of this statute."

Despite noting shared representation should not be a game of "Mother May I," in Creative Artists Group v. Jennifer O'Dell (TAC 26-99), the Defendant ruled against the manager for "submitting the artist without the agent's knowledge." Id., Pg. 5, lines 8-9. The contract was voided because by submitting the resume and 8x10 to a casting director, the personal manager could not rely on the Safe Harbor, as they exceeded "that permission by submitting the artist without the agent's knowledge."

It is irrational to think a statute has constitutional clarity when not even the agency with the responsibility to enforce it has ruled both ways on the same issue.

---

[4] The Ninth Circuit did not make a determination on the merits, instead finding that while the Labor Commissioner was the right party to sue, the Conference did not have standing because, unlike Siegel here, there was no Plaintiff instantly being affected by the Act.

The Commissioner, per the Ninth Circuit Brief, says representatives do not need a license to send out the sales materials for an artist. But what happens when their submissions result in a response, can they take the call? Can personal managers and other unlicensed representatives lawfully accept an offer for their client to then audition, or of employment by email, letter or phone from a casting director, producer, network, studio, club owner or other members of the hiring community? Can sales materials only be sent out if the representatives are certain no potential job can come from the submission? Since creating the picture/resume/reel of an artist is part of the sales process, part of procuring work for the artist, how can anyone save a licensed agent create the sales materials. If the submission of sales materials and that leads to an offer, even if that is legal, is it legal for the unlicensed representative asks the buyer to increase the size of the offer?  The TAA as written provides none of these answers and a full examination of TAA determinations only muddies those waters.

The Labor Commissioner acknowledges difficulty in discerning violations. "It goes without saying there will not always be a bright line between what constitutes arranging for the placement of an artist, and what constitutes selling a product or service, on the other. For close cases, there is no single formulation that can delineate on which side of the line the activity falls." Todd v. Meagher TAC 2012-1341 (Pg. 16, ll. 16-19.) **Game, set, match re: unconstitutional vagueness: if those empowered to enforce the law cannot clearly discern where lawfulness ends and lawlessness begins, how can a reasonable layperson of average intelligence be expected to make that distinction?**

With no statutory guidance and the Defendant's inconsistent holdings and opinions as to whether personal managers, publicists or lawyers can negotiate unsolicited opportunities, this Court must find this to be unconstitutionally vague.

### 3.    The Defendant Ignores Basic Rule Of Statutory Construction

In the aforementioned brief against the NCOPM, the Defendant noted that the words in a statute must be construed "according to [their] ordinary, contemporary,

common meaning." <u>Human Life of Wash. Inc. v. Brumsickle</u>, 624 F.3d 990, 1021 (9th Cir. 2010) (citations omitted)." Brief Supra, pg. 25. It is one of the fundamental rules of statutory construction, and as detailed below, one the Defendant ignores in enforcing the TAA.

"To 'procure' means 'to get possession of: obtain, acquire, to cause to happen or be done; bring about." <u>Wachs</u> Supra. Its synonyms include: "acquire, attain, bag, bring in, capture, come by, draw, gain, garner, get, knock down, land, make, obtain, earn, pull down, realize, reap, secure, win." (Merriam-Webster.)

Negotiate is not a synonym of procure, nor is "negotiate" synonymous with any of the almost two-dozen words that are synonymous with "procure." Per Merriam-Webster, negotiation is rather "the act or practice of negotiating," which is "to bring about through discussion and compromise; to deal with usually skillfully or efficiently; to talk over or dispute the terms of a purchase; and to carry through (as a process) to completion; and its synonyms are numerous: arrange, bargain, concert, conclude, settle, chaffer deal, dicker, haggle, covenant; argue, debate, discuss, hammer out, hash, reason, talk, talk over, work out, address, contend, cope, field, grapple, hack, manage, maneuver, manipulate, handle, play, swing, take, treat, chaffer, deal, dicker, haggle, horse-trade, engineer, finesse, jockey, bring off, carry off, pull, command, direct, guide, steer, control, micromanage, regulate, run react, respond, etc.

Thesaurus.com also includes these other words as synonyms to negotiation: "agreement, arbitration, compromise, conference, consultation, debate, diplomacy, discussion, intervention, mediation, meeting, and transaction," none of which are synonymous with the term "procure."

In the relevant context, procuring is the act of obtaining the job opportunity; negotiation is working toward the agreement of an obtained opportunity.

The Labor Commissioner intentionally conflates these terms; considering negotiation an element of procurement and thus an activity reserved for licensees:

> "We reject [the] contention that to prove unlawful procurement or attempted procurement one must offer evidence of solicitation or an initiated contact. This argument runs afoul of well-established **principles which we choose to follow**, namely, that the furthering of an offer constitutes a significant aspect of procurement prohibited by law since procurement includes the entire process of reaching an agreement on negotiated terms where the intended purpose is to mark an artist's talent." <u>Pryor v Franklin,</u> TAC 17 MP114 (1982); emphasis added.

It is not acceptable for an adjudicator to arbitrarily "choose to follow" a legal path; that is exactly what Courts prohibit. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." <u>Grayned v. City of Rockford</u> (1972) 408 U.S. 104, 108-109. All Americans, including personal managers, have the constitutional right to notice and reasonable opportunity to know what is required and prohibited. No law can be interpreted to encourage or facilitate arbitrary, potentially discriminatory enforcement.

"Fair notice is an essential requirement of any statutory scheme. 'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." <u>Pacific Bell LLC v. Public Utilities Commission</u>, 140 4th 718, 736 (2006). See also <u>City of Chicago v. Morales</u>, 527 U.S. 41, 52, 58-59 (1999); <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983); and among others <u>Smith v. Gougen</u>, 415 U.S. 566, 575 (1972),

It is important to note the civil nature of these disputes in no way remove the Labor Commissioner's burden for clarity: **Civil as well as criminal statutes must be sufficiently clear to provide a standard or guide against which conduct can be**

uniformly judged by courts and administrative agencies." Id.; see cited case of Morrison v. State Board of Education, 1 Cal. 3d 214, 231 (1969).

James Blancarte is a transactional attorney, a recognized specialist in negotiation. Per Solis v. Blancarte, TAC-27089 (2013), Blancarte was contacted by Mario Solis, a sportscaster, after a local TV station expressed interested in him. (Id., Pg. 3, lines 4-11. Blancarte negotiated the compensation, length of contract and other terms (Id., lines 19-23). Over seven years, the contract was renewed three times. The Labor Commissioner found that because a sportscaster is considered an artist (Id., Pg. 6, lines 3-11) and that "'procurement' includes any active participation in a communication with a potential purchaser of the artist's services aimed at obtaining employment for the artist, regardless of who initiated the communication."

Respectfully, it is impossible for one to think Blancarte went out and got something – procured it – when his work was fully reactionary to an opportunity he had nothing to do with initiating, it already existed when he was brought in to maximize the financials of the opportunity.

The Supreme Court has recognized that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." Chevron, USA v. NRDC, 467 U.S. 837, 844 -845 (1984). However, that accommodation should be disturbed if "it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." Id., Pg. 845. The Labor Commissioner's admitted **choice** to make one action out of two obviously separate actions, so incongruous to the words' ordinary, contemporary, common meaning is absurd and thus this Court should disturb it.

Without redress, the Labor Commissioner will continue to mete out, inconsistent, arbitrary rulings on what it means to "procure."

In Macy Gray v. Lori Leve Management (TAC 18-00), the manager's right to enforce a contract with an artist was affirmed, where the Commissioner found a showcase the manager arranged was to procure a recording contract. Indeed, Epic Records promptly signed Gray "as a direct result of the showcase" and Gray did not

19

commission the engagement. But in Park v. Deftones (TAC 9-97), the manager was found to have violated TAA for organizing 83 showcases for his client until, on the 84th effort, the band was signed to Maverick Records. The managers in both actions took identical actions but the Commissioner reached opposite results. Ironically, the manager in Deftones was punished for his tenacious commitment to his client. If a single action is legal, its repetition cannot be illegal. We cannot live in a world which is, "If at first you don't succeed, if you try again it's illegal." If the Defendant cannot explain why determination makes something unlawful, it must accede that if an activity is lawful once, repeated efforts cannot morph its lawfulness.

The Act offers no clarity as to what actions create illicit procurement. The Defendant admits of there being no bright line between legal versus unlawful behavior and adjudicators have no guidelines to follow, resulting, as the Marathon court noted, the Defendant's findings have been arbitrary, contradictory, and as applied, unconstitutional.

### B.    There is Ambiguity As To The Consequences For Violating The TAA

What most distinguishes The Talent Agencies Act from the Real Estate, Contractors, Bar Act and other licensing schemes is the choice or failure of the Legislature to codify a penalty provision for unlicensed activity.

Per BPC § 10136 of the Real Estate Act, unlicensed persons have no right to "collection of compensation for the performance [of a real estate transaction] without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of the action arose. Per BPC § 10139, those found to be engaging in the activities of a licensed broker without a license faces fines up to $20,000 and a six-month jail term.

Per § 6126 and § 6126.3(a) of the State Bar Act, any person found to be practicing law without a license is guilty of a crime punishable by imprisonment. Per § 6126.5, should anyone violate the above provisions while providing other services or selling goods, the remedy can include restitution,

actual damages, penalty and tax liabilities repaid, legal fees, interest and equitable relief.

Per BPC § 7031: (a) of the Contractor's Act, anyone found to have engaged in the business or acting in the capacity of a contractor without a license has no the right to contract; (b) those who utilized the services of an unlicensed contractor may bring an action to recover all paid compensation; and (c) any security interests to secure payments to the unlicensed contractors are ruled unenforceable.

In contrast, the TAA "is silent – completely silent – on the subject of the proper remedy for illegal procurement." Marathon Supra at 987. Unlike all other state licensing schemes, the TAA has no depravation statute giving authority to void or otherwise impair a violator's contractual rights. Neither is there notice of fine, penalty, repayment of interest nor criminality: (Lab. Code § 1700.44(b), "the failure of any person to obtain a license pursuant to this chapter shall not be considered a criminal act under any law of this state.")

That alone, per CA. law, should be enough for this Court to rule that the statutory scheme is unconstitutionally vague. "[I]n order for a consequence to be implied from a statute there must be greater justification for its inclusion than a consistency or compatibility with the act from which it is implied. A necessary implication within the meaning of the law is one that is so strong in its probability that the contrary thereof cannot reasonably be supposed." Grubb & Ellis Co. v. Bello, 19 Cal.App. 4th 231, 240 (1993).

"Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed." Lambert v. California 355 U.S. 225, 228 (1957).

The Defendant's established record of affecting the contractual rights of someone found to engage in unlicensed procurement –despite the Act being

completely silent on the subject of the proper remedy – conflicts with well-settled California law:

> "The general rule is that "[w]here the enabling statute is essentially remedial, and does not carry a penal program declaring certain practices to be crimes or provide penalties or fines in vindication of public rights, an agency does not have discretion to devise punitive measures such as the prescription of penalties or fines. ...

> "An administrative agency cannot by its own regulations create a remedy which the Legislature has withheld. 'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' Morris v. Williams, 67 Cal 2d 733, 748 (1967)." Dyna-Med Inc. v. Fair Empl. & Housing Comm., 43 Cal. 3d 1385,1388 (1987).

When the Labor Commission finds a TAA violation, it cites Buchwald v. Superior Court, 254 Cal. App. 2d 347 (1967) as the legal rational to disgorge the violator's contractual rights. "Since the clear object of the Act is to prevent improper persons from becoming [talent agents] and to regulate such activity for the protection of the public, a contract between an unlicensed [talent agent] and the artist is void." Id. at 351.

Buchwald has been the basis of five decades of determinations where personal managers — and now producers and attorneys — lose the benefit of their labors. It is also legally unsupportable: It is wrong about the Act's "clear object," and more important, all the relevant precedents Buchwald cites in its holding regarding remedies stand in conflict with Buchwald's conclusions.

There is no evidence the state ever worried about "improper persons" being talent agents. The state asks for no tests, no apprenticeships, no proof of competency… getting a talent agency license just requires filling out forms, mainly contact information, get a couple of associates to give personal recommendations, remit a $250 fee and send in some fingerprints. The only material barrier to a talent agency license is one's ability to remit the $50,000 bond, and improper cannot be defined as "not able to afford something."

Comparatively, one cannot just decide to be an attorney: they first have to have

the overall academic qualifications and test scores to be accepted to a law school. After this post-graduate schooling, which includes intensive study regarding the legality of contracts, attorneys must pass a famously detailed test, and each year thereafter participate in continuing education seminars. Much of this is codified in the State Bar Act.

If the Legislature wanted to put qualifications of competence, experience or education as a barrier to licensure, as it does for lawyers, contractors, doctors, etc., to ensure "improper persons" did not become or act as talent agents, it would have codified similar provisions into the TAA. It did not, and there is no evidence the Legislature ever considered such barriers to becoming or remaining a talent agent.

It is uniformly accepted the Act was created not to keep "improper persons" from being talent agents, but to keep employers from masquerading as employment counselors, to stop owners of burlesque halls and bordellos from fronting as talent representatives to lure ingénues to work for them. After three years of studying the Act, the California Entertainment Commission issued a report saying they could find "no clear legislative intent" as to the state's stance as to whether "anyone other than a licensed talent agent [may] procure employment for an artist without obtaining a talent agent's license from the Labor Commissioner." (Report of the California Ent. Comm., pg. 15.)

Most damning: all four State Supreme Court precedents the Appeals Court case Buchwald cites for its foundational rationale to void contracts for a TAA violation hold that voiding a contract is only proper under circumstances that do not exist in the TAA as written (Wood v. Krepps, 168 Cal. 382 (1914), Smith v. Bach, 183 Cal. 259 (1920), Loving & Evans v. Blick, 33 Cal. 2d 603 (1949), Severance v. Knight-Counihan Co., 29 Cal.2d 561 (1947).

Wood **refused to void a contract** because the ordinance did not "declare that a contract made by any one in the conduct of the various businesses for which licenses are provided to be procured … be invalid; nor is there any provision

therein indicating in the slightest this failure was intended to affect in any degree the right of contract." Id. at 386. The TAA has no such provision.

In Smith, the Court found that, "The imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and a contract founded upon such act is void." Id. at 262. **The TAA has no penalty statute and thus does not have, per Smith, the authority to void a contract.**

Loving found that, "it has been repeatedly declared in this state that 'a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract.'" While Defendant can argue the TAA was originally designed to protect the public, **as the legislature did not prescribe a penalty, per Loving, the TAA does not give her the authority to declare a contract void.**

Per Severance v. Knight-Counihan Co., 29 Cal.2d 561 (1947): **"If the statue does not provide expressly that its violation will deprive the parties to sue on the contract,"** and the TAA has no such clause, **"and the denial of the relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied."[5]**

Personal management is a contingency occupation; compensation is based on an agreed-to percentage of the artist's generated income.[6] Denying compensation

---

[5] On December 19, 2013, the Los Angeles Daily Journal published an article about how the *Buchwald* holding is unaligned from the precedents it proffers to use as foundational. The legal trade paper chose plain language in entitling the column, "A Generation of Incorrect Talent Agencies Act Rulings."

[6] It is a common misconception that personal managers do not to apply for talent agency licenses so they can charge more than ten percent. Not true: the TAA does not limit agency compensation; it only requires client/agency fee schedules to be submitted to the Labor Commissioner. Personal managers become talent agents because personal managers co-represent clients with talent agents, and the bylaws of each of the Artist Guilds – SAG/AFTRA, EQUITY, WGA and DGA – is a clause limiting the total compensation of talent agents to 10%. If a personal manager had a talent agency license and wanted to sign a guild-protected client, as all working artists are, and that potential client already was with a talent agency, there would be a barrier to the personal manager getting compensated at all. Conversely, it would be impossible to bring a working client to a talent agency, because would be no way to compensate the talent agent. Thus, getting a talent agency license would make personal managers and talent agents competitors, instead of complementary representatives as the industry works today.

after the artist has received the benefit of the manager's labors for months, often years of trying to better the plateau of an artist for their mutual economic benefit is neither proportional to the requirements of public policy nor in any way an appropriate remedy.

The U.S. Supreme Court has held that no matter how obvious it is that the legislature may want to punish a violator, notice is needed. Assigning a penalty without statutory guideposts "is a task outside the bounds of judicial interpretation" reserved only by legislative action. U.S. v. Evans, 333 U.S. 483, 495 (1948).

In Evans, the statute prohibited both bringing undocumented persons into the country and harboring them, but only contained a penalty for the former. While noting Congress wanted to prohibit both actions, the Court stated it was powerless to create a penalty for harboring because only Congress can assign penalties. Violations of law are "made up of two parts, forbidden conduct and a prescribed penalty. The former without the latter is no [violation]." See Evans at 486.

The law is clear: contracts cannot be affected without proper notice of remedy. The TAA, without a prescribed remedy, is unconstitutionally vague.

## D.     As Applied By Defendant, The TAA Puts An Unfair Burden On Interstate Commerce

Requiring citizens to use an in-state licensee versus a professional from outside the state is unconstitutional and illegal when, "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church Inc, 397 U.S. 137, 142 (1970).

The TAA's burden versus local benefits is clearly excessive, especially when it is clear that the one who benefits is the artist the TAA was created to protect. Who is harmed by a California-based artist having an opportunity they think is worthy enough to travel for?

As an example: the TAA found that Anita Baker's manager had violated § 1700.4(a) by using a Paris-based agency to get Ms. Baker a French endorsement deal and for her concert dates, used what was recognized as the premiere booking agency for urban artists, the Associated Booking Corporation ("ABC"), co-founded by Louis Armstrong, despite ABC being domiciled in New York City. See Baker v Bash, TAC 12-96.

ABC specialized in urban acts. No in-state agency had the capability, know-how and roster to provide the quality of opportunities ABC could offer.

To ensure all procurement actions were lawful as the TAA is enforced, Baker could have (1) fired ABC and been burdened by using an inferior but licensed agent; or (2) hired a licensee to work with ABC and had ABC only procure after getting permission each time from the licensee.

Either option would have burdened Ms. Baker's business. Losing the unequalled ability of ABC almost inevitably would have lowered her job options; using a second agency would have necessarily lowered her net profit by 10%.

Similarly, no licensed agency then or now has the same capability to reach out to the French buying community as a local talent agency. Here again, Ms. Baker was faced with only using a licensed agent and almost inevitably not heard about the opportunity, or necessarily paid out an extra 10% by involving the licensed agent.

Clearly this barrier to interstate commerce is an unfair burden and, per Pike, unconstitutional, to Baker and the many others in similar positions, be they country or oldies artists that play regional fairs that regional agents are used for, or performers who have moved to America but still want to use agents from their native lands to better look out for them back home. It also favors the group being regulated over the group the Act was created to

26

protect; hence eviscerating the rational basis of the law.

The enforcement is also protectionist, giving an unfair business advantage to the in-state licensed agency, to the detriment of the out of state entity. Per Pike, the Supreme Court…

> "has viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually *per se* illegal. Foster-Fountain Packing Co. v. Haydel, 278 U. S. 1; Toomer v. Witsell, 334 U. S. 385." Pike v. Bruce Church, Inc. Supra at 145.

No public purpose is served by a barrier which adds costs to the parties the Act was created to protect. The only beneficiaries are protected parties using the Act as a sword to sever contractual obligations to those who had been looking out for their welfare. None of the more recent cases that narrow Pike have any applicability in this matter, leaving the Act, per Pike, unconstitutional; violative of the dormant commerce clause.

## CONCLUSION

This suit was filed in State Court, and the Defendant chose to move it, using the pretext that this setting is more proper to decide the constitutional issues.

But the unconstitutionality issues never need to be reached here. This is at its foundation a matter of contractual rights. The Talent Agencies Act has no provision of remedy, and it is hornbook law that unless there is notice of consequence, adjudicators have no authority to disturb anyone's contractual rights.

Yes, as the inconsistencies of TAA determinations make clear, the Act is unconstitutionally vague on its face and how applied. As enforced, it serves as a protection racket for talent agents and an unconstitutional burden on interstate

commerce. With all that in mind, the Plaintiff beseeches this Court to bar the Labor Commissioner and all adjudicators, through an injunction order, from interfering on the contractual rights of anyone who has been entwined in a Talent Agencies Act controversy.


Respectfully Submitted,

Rick Siegel in *pro per*

## DECLARATION OF RICK SIEGEL IN SUPPORT OF MOTION

I, RICK SIEGEL, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct:

     1.    I am an individual living and working in the County of Los Angeles. The following is based upon my personal knowledge. If called as a witness, I could and would testify as such.

     2.    I submit this declaration in support of the Motion For Summary Judgement.

     3.    From 1990 through 2009, I was a personal manager representing actors, writers, directors and comedians. In 2017 I returned to that profession, after spending the interim time as the CFO of The Green Garmento, LLC, a manufacturer of environmentally friendly packaging for drycleaning, laundry and other applications.

     3.    I left the profession because after earnestly and honestly making people tens of millions of dollars and having that money what I considered to be wrongfully disgorged, I left the profession. The last straw, ironically, happened when a Court of Appeals affirmed Judge Snyder's finding that it was fine for the TAA not to have a penalty provision therein, that another set of statutes in a wholly different set of Codes (Civil instead of Labor Code) about severability was authority enough.

     4.    A few years ago, after being amazed that the Labor Commissioner had found for a sportscaster and against an attorney for the attorney doing what attorneys do, negotiate the sportscaster's contract, I went back to the 'Roe v. Wade of Talent Agency Act determinations, the 1967 Buchwald v. Superior Court case, wanting to see just how if determined its authority to void a contract. What I saw was new and eye-opening… that Buchwald is misaligned, in contradiction, misinterpreted and wrongfully stated all four of the holdings. In point of fact, all four of the holdings, individually and even more strongly together, hold that since the TAA has no notice of remedy therein, state law is clear that no adjudicator had the right to in any way affect the relevant contractual rights.

5.      With that knowledge, I knew that should the situation arise, I could be confident that if I went back into the business and someone potentially wanted to use the TAA to avoid an obligation, I could return to the courts. I was confident that the four precedents Buchwald cited usurped by the four Supreme Court matters. Even if one chose to say that subsequent cases that are founded upon Buchwald, even CASC cases, could be challenged because they have contradictory holdings to not only the previous CASC cases, but the uniform holdings of other states and Federal cases.

6.      I did return to management, and I have found myself at risk of a client first getting a deal and then choosing not to pay me the owed compensation.

7.      I filed in State Court because, while I think there are clear constitutional issues of vagueness and the dormant commerce clause, first and foremost there are statutory construction issues to where I doubt the constitutional issues will ever need to be adjudicated in this matter.

8.      Since the filing, I have had several conversations with opposing counsel. I offered to withdraw my case with prejudice if even one published case could be found where notice wasn't necessary before, quoting the United States Supreme Court, property rights interests are disturbed, before assessments are made, before penalties are assessed." Lambert v. California 355 U.S. 225, 228 (1957). As I was informed a few days ago that we will need to go ahead, I can only assume that he was unable to find that case. And it is my understanding if it cannot be found, than the claims should be affirmed.


If the above is untrue, I am ready to accept any appropriate penalty. I am cognizant of California's definition of perjury and its potential penalties, including prison.

By: _Rick Siegel_

Rick Siegel

## PROOF OF SERVICE

I am over the age of 18 and not party to this action.

I am a resident of and employed where the mailing occurred; my business address is 20109 Nordhoff St, Chatsworth CA 91311.

On August 22, 2017, I served the interested parties in the action entitled Rick Siegel v. Julie Su, acting in her official capacity as Labor Commissioner, by placing a true copy thereof enclosed in a sealed envelope as follows:

[ ]  BY U.S. MAIL       I deposited such an envelope in the mail at Reseda, California, with postage thereon fully prepaid.

[ ]  BY FAX       I caused such documents to be faxed to the above mentioned address(es).

[x}  BY COURIER       I caused such envelope to be sent via courier and delivered to
          John Killeen
          Deputy Attorney General
          1300 I Street, Ste 124
          Sacramento, CA 94244-2550
          916 324 8835

[ ]  BY PERSONAL       I caused such envelope to be delivered by hand to the offices of the SERVICE address(es).

[X]  STATE       I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[ ]  FEDERAL       I declare that I am employed in the office of a member of the bar of this Court whose direction the service was made.

Executed on December 4, 2017 at Los Angeles, California

_____

Terrel Miller