XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Acting Supervising Deputy Attorney General
JOHN W. KILLEEN
Deputy Attorney General (attorney for notice)
State Bar No. 258395
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6045
  Fax: (916) 324-8835
  E-mail: John.Killeen@doj.ca.gov
*Attorneys for Defendant California Labor
Commissioner Julie Su*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **RICK SIEGEL,**<br><br>                    Plaintiff,<br><br>     **v.**<br><br>**JULIE SU,** in her official capacity as the California Labor Commissioner,<br><br>                    Defendant. | Case No. 2:17-cv-07203 CAS (SSx)<br><br>**CALIFORNIA LABOR COMMISSIONER JULIE SU'S OPPOSITION TO RICK SIEGEL'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          February 12, 2018<br>Time:          10:00 a.m.<br>Courtroom:  8D<br>Judge:         Hon. Christina A. Snyder<br>Trial Date:   None Set<br>Action Filed: September 29, 2017 |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................1

Facts ...........................................................................................2

Legal Standard ...........................................................................2

Argument....................................................................................2

    I.    The TAA Is Not Unconstitutionally Vague. ..........................2

        A.    It Is Clear Who Is Subject to Regulation Under the TAA. .........2

        B.    It Is Clear What Activity Is Regulated by the TAA. ..................3

        C.    It Is Clear What the Consequences Are for Violating the TAA.......................................................................................8

            1.    Under California Law, a Contract Can Be Illegal Even if Additional Criminal or Civil Penalties Are Not Imposed.............................................................9

            2.    The Remedy of Contract Voidness Furthers the Remedial Purposes of the TAA. ......................................12

            3.    The Non-TAA Cases on Which Siegel Relies Are Irrelevant. ......................................................................13

    II.    The TAA Does Not Place a Substantial Burden on Interstate Commerce...........................................................................16

Conclusion..................................................................................19

1

# TABLE OF AUTHORITIES

2

3
**Page(s)**

4
**FEDERAL CASES**

5
*Ai v. United States*
6
   809 F.3d 503 (9th Cir. 2015) ..................................................................4

7
*Desert Outdoor Adver., Inc. v. City of Oakland*
8
   506 F.3d 798 (9th Cir. 2007) ..................................................................2

9
*Hills v. Scottsdale Unified Sch. Dist. No. 48*
10
   329 F.3d 1044 (9th Cir. 2003) ................................................................4

11
*Johnson v. Frankell*
12
   520 U.S. 911 (1997)................................................................................8

13
*Nat'l Conference of Pers. Managers v. Brown*
14
   No. 12-09620 DDP (RZX) (C.D. Cal. Aug. 13, 2015)..........................4

15
*Pest Comm. v. Miller*
   626 F.3d 1097 (9th Cir. 2010) ................................................................4
16
*Pickup v. Brown*
17
   740 F.3d 1208 (9th Cir. 2014) ................................................................4

18
*Pike v. Bruce Church, Inc.*
19
   397 U.S. 137 (1970).............................................................................16

20
*Puente Arizona v. Arpaio*
21
   821 F.3d 1098 (9th Cir. 2016) ................................................................2

22
*Styers v. Ryan*
23
   811 F.3d 292 (9th Cir. 2015) ..................................................................3

24
*Safeco Ins. Co. of Am. v. Guyton*
   692 F.2d 551 (9th Cir. 1982) ........................................................10, 13
25

26
*U.S. v. Evans*
   333 U.S. 483 (1948).............................................................................16

27

28

# TABLE OF AUTHORITIES
## (continued)

Page

**STATE CASES**

*Buchwald v. Superior Court*
    254 Cal. App. 2d 347 (1967) ................................................................. *passim*

*Golba v. Dick's Sporting Goods, Inc.*
    238 Cal. App. 4th 1251 (2015) ...................................................................12

*Kashani v. Tsann Kuen China Enter. Co.*
    118 Cal. App. 4th 531 (2004) ...................................................................11

*Loving & Evans v. Blick*
    204 P.2d 23 (1949)................................................................ 14, 15, 16

*Marathon Entm't, Inc. v. Blasi*
    42 Cal. 4th 974 (2008) ................................................................. *passim*

*McIntosh v. Mills*
    121 Cal. App. 4th 333 (2004) ...................................................................12

*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*
    115 P.3d 41 (Cal. 2005)...................................................................10, 14

*R.M. Sherman Co. v. W. R. Thomason, Inc.*
    191 Cal. App. 3d 559 (1987) ...................................................................9

*Severance v. Knight-Coulihan Co.*
    177 P.2d 4 (1947)...................................................................15

*Smith v. Bach*
    191 P. 14 (1920)...................................................................14, 15

*Styne v. Stevens*
    26 P.3d 343 (Cal. 2001) ................................................................. *passim*

*Vitek v. Alvarado Ice Palace, Inc.*
    34 Cal. App. 3d 586 (1973) ...................................................................10, 13

*Waisbren v. Peppercorn Prods., Inc.*
    41 Cal. App. 4th 246 (1995) ................................................................. *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Wood v. Kreps*
    143 P. 691 (Cal. 1914) .................................................................. 13, 14, 15

*Yoo v. Robi*
    126 Cal. App. 4th 1089 (2005) ......................................... 8, 9, 10, 15

**STATUTES**

California Business & Professions Code
    § 143..................................................................................................10, 12
    § 6125.....................................................................................................12
    § 6126.....................................................................................................12
    § 7031.....................................................................................................11

California Civil Code
    § 1550......................................................................................................9
    § 1596....................................................................................................10
    § 1598....................................................................................................10
    § 1599....................................................................................................10
    § 1608....................................................................................................10
    § 1667....................................................................................................10
    § 3513....................................................................................................10

California Food & Agricultural Code
    § 14591..................................................................................................12

California Insurance Code
    § 15006(b)..............................................................................................11

California Labor Code
    § 1700.4(a)...............................................................................................6
    § 1700.4(b)...............................................................................................7
    § 1700.46...........................................................................................9, 11
    § 1706....................................................................................................12

**CALIFORNIA LABOR COMMISSIONER DETERMINATIONS**

*Anderson v. D'Avola,* Case No. TAC 63-93 (Feb. 24, 1995) ......................................5

*Baker v. Bash,* Case No. TAC 12-96 (Dec. 27, 1996) ......................................17, 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Blasi v. Marathon Entertainment,* Case No. TAC 15-03 (Jan. 30, 2004) .................7

*Creative Artists Entertainment Group v. O'Dell,* Case No. TAC 26-99
    (May 31, 2000) ........................................................................................5

*Gittelman v. Karolat,* Case No. TAC 24-02 (Jul. 19, 2004) .....................................7

*Gray v. Leve,* Case No. TAC 18-00 (Jul. 13, 2001)...................................................6

*Moreno v. Park*, Case No. TAC 9-97 (Jan. 20, 1998) ...............................................6

*Todd v. Meagher*, Case No. TAC-13418 (Mar. 29, 2012)..........................................6

**OTHER AUTHORITIES**

1 B.E. Witkin, Summary of California Law Contracts
    § 432 (11th ed. Oct. 2017 update) ............................................................10
    § 487 (11th ed. Oct. 2017 update) ............................................................10

1959 California Statutes
    Chapter 888....................................................................................................11

1982 California Statutes
    Chapter 682....................................................................................................11

California Labor Commissioner Julie Su files this opposition to Rick Siegel's motion for summary judgment.  Concurrently with Siegel's motion, the Court will be hearing the Labor Commissioner's motion for judgment on the pleadings.  *See* Dkt. No. 13.  The arguments in support of and in opposition to both motions are virtually identical.  So instead of cutting and pasting large portions of her memorandum in support of judgment on the pleadings into this opposition, the Labor Commissioner will cross-reference certain portions of her memorandum:

## INTRODUCTION

10 years ago, in a case brought by Siegel, the Court determined that California's Talent Agencies Act ("TAA") was not unconstitutionally vague.  Now the same litigant brings the same claims to the same court, and the result should be the same.  The TAA is constitutional, as the Labor Commissioner has demonstrated in her memorandum in support of motion for judgment on the pleadings.  *See* Dkt. No. 13-2 ("Memorandum" or "Mem.").  It is clear who is subject to regulation under the TAA, what activity is regulated by the TAA, and what the consequences are for violating the TAA.  Also, the TAA is a typical licensing statute that does not impose a substantial burden on interstate commerce.

Siegel's primary argument is that the California courts which have interpreted the TAA are "wrong."  In an attempt to sidestep the line of governing California cases construing the TAA, Siegel urges the Court instead to focus only on the text of the statute and authorities that have nothing to do with the TAA, and then conduct its own de novo interpretation of California law.

The flaw in this approach is that the Court is not free to substitute its interpretation of California law for that of the California courts.  Instead, the proper inquiry is for the Court to take the California courts' understanding of the TAA and then assess whether the law as so interpreted is constitutional.  It undoubtedly is, as the Labor Commissioner has demonstrated.  Accordingly, Siegel's motion for summary judgment should be denied.

## FACTS

The Memorandum details all the facts necessary to support denial of Siegel's motion for summary judgment. *See* Mem. at 2-7.

Siegel served a statement of undisputed facts on the Labor Commissioner. But it does not appear that he filed it, based on the Court's online docket. Out of an abundance of caution, the Labor Commissioner is filing a Statement of General Disputes (Local Rule 56-2) in response to the statement Siegel served.

## LEGAL STANDARD

The Court may grant summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court is "obligated to interpret a statute, if it is fairly possible, in a manner that renders it constitutionally valid." *Desert Outdoor Adver., Inc. v. City of Oakland*, 506 F.3d 798, 802 (9th Cir. 2007). Similarly, to prevail on a facial challenge, Siegel "must establish that no set of circumstances exists under which [the TAA] would be valid." *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (citations omitted).

## ARGUMENT

### I.   THE TAA IS NOT UNCONSTITUTIONALLY VAGUE.

The Memorandum explained in detail why Siegel's claims fail as a matter of law. *See* Mem. at 7-16. The Labor Commissioner will not repeat verbatim her affirmative case, which, in addition to being a basis for granting judgment on the pleadings in favor of the Labor Commissioner, is an equally compelling argument for denying Siegel's motion for summary judgment. But she will specifically address the arguments raised by Siegel in his motion for summary judgment:

### A.   It Is Clear Who Is Subject to Regulation Under the TAA.

As this Court recognized in dismissing Siegel's earlier lawsuit, it is clear that the TAA regulates those who procure employment for artists, as opposed to persons

1  who happen to have a certain job title.  *See* Mem. at 9 (citing *Marathon Entm't, Inc.*

2  *v. Blasi*, 42 Cal. 4th 974, 986 (2008) ("*Marathon*") [the TAA "regulates *conduct*,

3  not labels"]).

4       In response, Siegel argues that the California Supreme Court's "holding is

5  wrong" and urges a different reading of state law.  *See* Plf.'s Mem. of Points &

6  Auths. ("Siegel MSJ") at 11.  But even if this Court were inclined to agree with

7  Siegel's interpretation of state law, it is "constrained to defer to the highest state

8  court on a matter of state law and may not construe [state law] differently than did

9  the [state] Supreme Court."  *Styers v. Ryan*, 811 F.3d 292, 297 n.5 (9th Cir. 2015).

10  *Marathon* and *Styne v. Stevens* make clear that, as a matter of California law, the

11  TAA "establishes its scope through a functional, not a titular, definition."

12  *Marathon*, 42 Cal. 4th at 986.  Indeed, the California Supreme Court in *Marathon*

13  was responding to Siegel himself making the same argument he repeats here.  The

14  California Supreme Court determined that personal managers are not exempt from

15  the reach of TAA just because they call themselves "personal managers."  Rather,

16  "they remain exempt from regulation insofar as they do those things that personal

17  managers do, but they are regulated under the Act to the extent they stray into doing

18  the things that make one a talent agency under the Act."  *Marathon*, 42 Cal. 4th at

19  989.  The California Supreme Court has rejected Siegel's interpretation of state law,

20  and this Court must too.

21       **B.   It Is Clear What Activity Is Regulated by the TAA.**

22       The TAA regulates the "procurement" of "employment," terms which are not

23  so uncertain or standardless that they rise to the level of a constitutional violation.

24  *See* Mem. at 10-14.

25       Siegel attempts to point out inconsistencies in Labor Commissioner rulings

26  and public statements to demonstrate that the TAA is unconstitutionally vague.  *See*

27  Siegel MSJ at 14-20.  But, as the Labor Commissioner noted in the Memorandum,

28  even if the Labor Commissioner and the California courts may not have "reached a

1    perfectly uniform approach to analyzing" the TAA, "the lack of 'perfect clarity and

2    precise guidance' is not a sufficient basis for declaring the provisions

3    unconstitutionally vague." Mem. at 13 (citing *Pest Comm. v. Miller*, 626 F.3d

4    1097, 1112 (9th Cir. 2010) (citation omitted)). For any statutory scheme, it is

5    always possible to identify a hypothetical factual situation to which a law has yet to

6    be applied "with perfect clarity and precise guidance." *Pickup v. Brown*, 740 F.3d

7    1208, 1233, *as amended on denial of petition for reh'g* (9th Cir. 2014) (citation

8    omitted). But "that there may be some 'close cases' or difficult decisions does not

9    render" a law "unconstitutionally vague." *Hills v. Scottsdale Unified Sch. Dist. No.

10   48*, 329 F.3d 1044, 1056 (9th Cir. 2003). Instead, it must be apparent that there is

11   "no rule or standard at all." *Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015).

12   As the California court found in *Wachs*, and as Judge Pregerson found in *National

13   Conference of Personal Managers*,[1] the TAA provides a standard of conduct

14   ("procure . . . employment") that is constitutionally adequate. *See* Mem. at 11.

15        In addition, when examined, the alleged inconstancies identified by Siegel turn

16   out not to be inconsistencies at all, or turn out to be applications of the law that are

17   at most "close cases," *Hills*, 329 F.3d at 1056, rather than examples of a completely

18   standardless statute. For example, Siegel cites page 28 of the Labor

19   Commissioner's brief in *National Conference of Personal Managers*, where the

20   Labor Commissioner said:

21

22        The examples NCOPM cites, standing alone, clearly do not constitute the
         "procurement" of "employment" because no employment or engagement
23        has been obtained for the artist. Personal managers do not need a license
         to "send[] out resumes, photographs, videotapes, or written materials
24        for an artist." AOB at 27-28. Nor do personal managers need a license to
         provide "other services for which artists often contract, such as personal
25

26   ───────────────
     [1] Contrary to Siegel's suggestion, *see* Siegel MSJ at 15 n.4, the Ninth Circuit
27   affirmed Judge Pregerson's ruling on the merits, albeit in an unpublished opinion.
     *See Nat'l Conference of Pers. Managers v. Brown*, No. 12-09620 DDP (RZX)
     (C.D. Cal. Aug. 13, 2015), 2015 WL 4873541, *6-7, *aff'd*, 690 F. App'x 461 (9th
28   Cir. Apr. 25, 2017).

4

and career management (i.e. advice, direction, coordination, and oversight with respect to an artist's career or personal or financial affairs)." *Styne v. Stevens*, 26 P.3d 343, 349 (Cal. 2001).

*See* Def.'s Request for Jud. Not. in Support of Opp. to Mot. for Summ. J. ("MSJ RJN"), Ex. 1 at 28; Siegel MSJ at 15. Siegel then claims that this statement is contradicted by the Labor Commissioner's conduct in three cases. *See* Siegel MSJ at 15. But in all three cases Siegel cites, the personal manager did not limit their activity *only* to sending out sales materials, the hypothetical discussed in the Labor Commissioner's earlier brief. Instead, there was no dispute that the personal managers went farther and actively closed the deal on behalf of the artist by procuring engagements for the artists. *See Marathon*, 42 Cal. 4th at 981 ("The Commissioner found Marathon had procured various engagements for Blasi, including a role in the television series *Stong Medicine*."); MSJ RJN, Ex. 2 at 5-6, 11 (manager procured for actor a role on the television series *Home Improvement*); MSJ RJN, Ex. 3 at 4-5 (manager apparently obtained some work for actor and actor paid some commissions to manager, though the opinion does not describe which specific projects were procured by the manager).

It was the procurement of employment, not the distribution of information *standing alone*, that crossed the line into illegality. As the Labor Commissioner went on to say in the same Ninth Circuit brief:

> But when a personal manager turns from providing services to the artist (which might include generalized distribution of information) to interacting with third parties for the purpose of obtaining a specific engagement for the artist, the personal manager crosses the line from providing information to "procuring" employment for the artist. In the scenario NCOPM describes, a blanket distribution of information would not violate the TAA. But when the recipient of that information seeks to employ or engage the artist and contacts the personal manger to facilitate a specific engagement, at that point the personal manager must refer the inquiry to a licensed talent agent; selling the artist's services to the third

party constitutes a violation of the TAA.  Of course, the personal manager could avoid all uncertainty simply by obtaining a talent agent license in the first place.

MSJ RJN, Ex. 1 at 29.[2]

Similarly, Siegel claims that two other Labor Commissioner determinations are inconsistent: *Macy Gray v. Lori Leve Management* and *Moreno v. Park* (later captioned *Park v. Deftones*).  *See* Siegel MSJ at 19-20.  Again, no such inconsistency exists.  In *Gray,* the Labor Commissioner found that the manager lawfully helped an artist obtain a recording contract, which is an activity specifically exempted from the reach of the TAA.  *See* MSJ RJN, Ex. 4; Cal. Lab. Code § 1700.4(a) ("procur[ing] recording contracts for an artist" not a violation of the TAA).  To procure the recording contract, the manager arranged for the artist to perform an unpaid showcase at a friend's nightclub, to which the manager invited executives from several record companies.  *See* MSJ RJN, Ex. 4 at 3.  As a result of the showcase, Gray received a recording contract.  *Id.*  The Labor Commissioner found that this single, unpaid performance was part of the procurement of a recording contract, not the procurement of "employment or engagements" that would require a talent agent license.  *Id.* at 6, 8.

In sharp contrast to the single unpaid showcase in *Gray*, in *Park v. Deftones*, the manager booked "84 performance engagements" for the band over multiple years.  MSJ RJN, Ex. 5 at 2; *see id.* at 3 (characterizing these engagements as "gigs").  Not surprisingly, the Labor Commissioner found that the unlicensed manager was in the business of procuring engagements for a band, rather than in the business of procuring a recording contract, and voided the contract.  *Id.*  *Gray* and *Deftones* are not inconsistent.

---

[2] *Todd v. Meagher*, which Siegel cites on page 16 of his brief, stated the unremarkable proposition that close cases under the TAA exist, as is true of any statutory scheme.  *See* MSJ RJN, Ex. 6 at 16.  In *Todd*, the Labor Commissioner went on to find that it was not a close case, and that "it was clear" that the manager had procured engagements or employment for the artist.  *Id.* at 17.

As a final example, Siegel claims that on one occasion, in two cases with the "same facts" in the "same time period," the Labor Commissioner issued "two wholly opposite rulings." Siegel MSJ at 9; *see* MSJ RJN, Exs. 7 (*Gittelman*), 8 (*Blasi*). Not so. While *Gittelman* and *Blasi* shared the narrow fact that both artists appeared on talk shows, they involved separate legal issues, with the Labor Commissioner deciding one issue in *Gittelman* and another issue in *Blasi*.

In *Gittelman*, the Labor Commissioner found that a "talent agency license is not required for the procurement of a guest appearance on a talk show provided the appearance does not involve the rendition of artistic services." MSJ RJN, Ex. 7 at 13. The Commissioner did not base its ruling on the question of whether employment had been "procured"—the relevant issue here—but on whether the individual was acting as an "artist" when he appeared on a talk show. *Id.* (citing Cal. Lab. Code § 1700.4(b)).

In *Blasi*, by contrast, it appears that the personal manager failed to raise the argument that was successfully asserted in *Gittelman*. *See* MSJ RJN, Ex. 8. It is unclear if the result in *Blasi* would have been different had the personal manager argued that Blasi was not an "artist" when engaging in certain activities. Instead, the Labor Commissioner found that Marathon had procured work for Blasi on a film and television series, and had secured appearances for Blasi on three talk shows and an audition for a play. *See* MSJ RJN, Ex. 8 at 5. Because there "was no material dispute that Marathon" had "engaged in one or more acts of procurement," *Marathon*, 42 Cal. 4th at 990, neither the Labor Commissioner nor the California courts addressed the precise question of whether arranging for an artist's appearance on a talk show, and nothing more, constitutes "procurement" of "employment."

In sum, Siegel has failed to carry his burden of proving that the TAA is a vague statute being applied in a standardless manner. As other courts have recognized, the concept of "procuring" "employment" is readily understandable in

1    the context of California law.  It is true that, after *Marathon*, a fact-finder may have

2    to sever procurement-related activities from non-procurement-related activities.

3    *Marathon*, 42 Cal. 4th at 996.  And that severability analysis will be fact-intensive.

4    But that analysis occurs as a second step, following the first step of determining

5    that "employment" has been "procured" for an artist.  That first step—the inquiry

6    concerning whether "employment" has been "procured"—is not so lacking in

7    notice or standardless that it is unconstitutionally vague.

8    **C.    It Is Clear What the Consequences Are for Violating the TAA.**

9         It is clear that the consequences for violating the TAA are contract illegality

10   and voidness, as the Court recognized in dismissing Siegel's earlier lawsuit—a

11   ruling that is preclusive here.  *See* Mem. at 14.

12        Siegel again argues that the Court should disregard California law construing

13   the TAA.  *See* Siegel MSJ at 22 (*Buchwald* is "wrong").  Siegel contends that if one

14   puts aside the last five decades of California law—including the law in place when

15   the TAA was enacted—then it is unclear what the consequences are for violating

16   the TAA.

17        But the Court cannot simply ignore the California courts' interpretation of

18   California law.  *See Johnson v. Frankell*, 520 U.S. 911, 916 (1997); *supra* Section

19   I(A).  And California law is crystal clear:  "[A]n unlicensed person's contract with

20   an artist to provide the services of a talent agency is illegal and void."  *Styne v.*

21   *Stevens*, 26 P.3d 343, 349 (Cal. 2001); *see id.* at 352 ("the Commissioner may

22   declare the contract void"); *Marathon*, 42 Cal. 4th at 992 n.11 (approving *Styne*),

23   994 ("the Labor Commissioner has the 'power' to void contracts"); *Yoo v. Robi*,

24   126 Cal. App. 4th 1089, 1103 (2005) ("California courts have uniformly held that a

25   contract . . . is void ab initio"); *Waisbren v. Peppercorn Prods., Inc.*, 41 Cal. App.

26   4th 246, 261 (1995); *Buchwald v. Superior Court*, 254 Cal. App. 2d 347, 351

27   (1967).

28

1    Contrary to Siegel's contention, the Labor Commissioner is not prescribing a
2    penalty beyond what the Legislature has prescribed. *See* Siegel MSJ at 22.
3    Predecessors to the TAA had a criminal sanction, but the Legislature removed it
4    because it believed that the sanction of contract voidness was the proper remedy for
5    a violation of the TAA. *Waisbren*, 41 Cal. App. 4th at 261-62; *see* RJN, Exs. 9, 10
6    (enactment and repeal of former California Labor Code section 1700.46). In this
7    way, the Legislature "approved the remedy of declaring agreements void if they
8    violate the Act. Thus, an agreement that violates the licensing requirement is illegal
9    and unenforceable despite the lack of criminal sanctions." *Waisbren*, 41 Cal. App.
10   4th at 262; *see Yoo*, 126 Cal. App. 4th at 1104. This long-standing interpretation of
11   the TAA is no mystery, especially to a sophisticated repeat player like Siegel.

12   Siegel's wide-ranging contentions to the contrary are unpersuasive:

13   **1.   Under California Law, a Contract Can Be Illegal Even if
14        Additional Criminal or Civil Penalties Are Not Imposed.**

15   First, Siegel argues that a statute is per se unconstitutionally vague if it does
16   not prescribe a criminal sanction, but if contracts made in violation of it are found
17   to be illegal and void. *See* Siegel MSJ at 21-25. This argument has been
18   specifically rejected by a California appellate court. *Waisbren*, 41 Cal. App. 4th at
19   261 ("Nothing in the case law requires the existence of criminal penalties as a
20   prerequisite to declaring an illegal contract to be void"). It has also been rejected
21   by this Court. *See* Dkt. No. 13-1, Ex. B at 7 ("Siegel attacks the application of the
22   TAA because the statute does not give notice of the penalty for engaging in
23   prohibited conduct"); *id.* at 14 (rejecting argument); Dkt. No. 13-1, Ex. D at 6-7
24   (recognizing rejection of argument).

25   The Court's 2008 ruling remains correct. Under California law, the general
26   rule is that "where a statute prohibits or penalizes certain conduct, the courts will
27   infer a prohibition of contracts based on such conduct." *R.M. Sherman Co. v. W. R.*
28   *Thomason, Inc.*, 191 Cal. App. 3d 559, 565 (1987); *see* Cal. Civ. Code §§ 1550,

9

1   1596, 1598, 1599, 1608, 1667, 3513; 1 B.E. Witkin, Summary of California Law

2   Contracts §§ 432, 487 *et seq.* (11th ed. Oct. 2017 update); *cf.* Cal. Bus. & Prof.

3   Code § 143.  Of course, the general rule is subject to exceptions.  *See MW Erectors,*

4   *Inc. v. Niederhauser Ornamental & Metal Works Co.*, 115 P.3d 41, 55 (Cal. 2005).

5   The determination of whether a contract should be voided requires a case-by-case

6   analysis of legislative intent "to find out whether the makers meant a contract in

7   contravention of it should be void." *Vitek v. Alvarado Ice Palace, Inc.*, 34 Cal.

8   App. 3d 586, 591-92 (1973).

9         This case-by-case analysis is exactly what the California courts did in

10  *Buchwald*, *Waisbren*, *Styne*, *Yoo*, and *Marathon* when they determined that the

11  clear intention of the California Legislature was for contracts between artists and

12  unlicensed managers to be illegal and void.  For example, in *Marathon*, the

13  California Supreme Court noted the absence of a remedy in the text of the TAA.

14  *Marathon*, 42 Cal. 4th at 991.  But instead of concluding that no remedy existed (as

15  Siegel urges), it read the TAA and its legislative history in conjunction with

16  California's general contract law, "giv[ing] effect to both." *Id.* (discussing Civil

17  Code sections 1598 and 1599).  It reiterated that "an unlicensed person's

18  contract . . . is illegal and void"—the long-standing position of California courts

19  based on the general rule described above. *Id.* at 992 n.11 (citing *Styne*), 994 ("the

20  Labor Commissioner has the 'power' to void contracts"); *see also Styne*, 26 P.3d at

21  349; *id.* at 352; *Yoo*, 126 Cal. App. 4th at 1103; *Waisbren*, 41 Cal. App. 4th at 261;

22  *Buchwald*, 254 Cal. App. 2d at 351.  But, applying general contract principles

23  "fully to disputes under the Act," the court then determined that a contract between

24  an unlicensed person and an artist could be could be severed between its lawful

25  portion and its unlawful portion. *Id.* at 996.

26        Siegel also advances the theory that because the text of the TAA does not

27  mention contract voidness, there is no remedy and it is unconstitutionally vague.

28  But that argument is directly foreclosed by *Marathon*, *Waisbren*, and the general

1    rule of contract voidness in California law. In *Marathon*, the California Supreme

2    Court affirmed that the right approach is to interpret the TAA in light of general

3    contract law, "giving effect to both." *Marathon*, 42 Cal. 4th at 991. The

4    touchstone is legislative intent; and for the TAA, the Legislature specifically

5    removed the existing criminal sanction because it believed that the remedy of

6    contract voidness was an appropriate sanction. *See Waisbren*, 41 Cal. App. 4th at

7    262; *see also* RJN, Exs. 9, 10 (enactment and repeal of former Labor Code section

8    1700.46). Thus, as interpreted by the California courts, the remedy for violating the

9    TAA is clear. And this is the interpretation of California law that the Court must

10    follow, not Siegel's.

11       Siegel further attempts to undercut the California courts' interpretation of the

12    TAA on the basis that "no ordinary citizen would know to look" at the Civil Code

13    to find that illegal contracts are void. Siegel MSJ at 6. But this is true of all illegal

14    contracts; whether or not the "ordinary citizen" can find a precise Civil Code

15    citation, they know that the contract is illegal because the Legislature has elsewhere

16    declared certain conduct illegal. *Cf. Kashani v. Tsann Kuen China Enter. Co.*, 118

17    Cal. App. 4th 531, 540-43 (2004) (survey of contract illegality). The "ordinary

18    citizen['s]" purported lack of knowledge of the Civil Code does not transform their

19    illegal contract into a legal one.

20       Along the same lines, Siegel attempts to argue that the TAA is vague because

21    it is structured differently than other licensing statutes. This line of argument is

22    irrelevant; as demonstrated above, licensing schemes differ, and however other

23    licensing schemes are structured, the Legislature clearly intended that contracts

24    made in violation of the TAA be void.

25       This line of argument is also overstated. Some licensing schemes include an

26    explicit prohibition on recovery for unlicensed work. *See, e.g.*, Cal. Bus. & Prof.

27    Code § 7031 (contractors); Cal. Ins. Code § 15006(b) (insurance adjustors). But

28    others—like the TAA—do not. They are either silent and are governed by the Civil

1    Code described above, or they are silent and are governed by a distant provision in

2    the Business and Professions Code (section 143).  *See, e.g.*, Cal. Bus. & Prof. Code

3    §§ 6125, 6126 (attorneys); Cal. Lab. Code §§ 1706 *et seq.* (child performer services

4    permits); Cal. Food & Agric. Code §§ 14591 *et seq.* (distributors of fertilizing

5    materials).

6         For example, if an unlicensed attorney were to look at the text of Business and

7    Professions Code sections 6125 and 6126, which prohibit the unauthorized practice

8    of law, they would not see statutory text informing them that they might not be

9    compensated for their unlawful work.  Yet there is no question that contracts to

10   unlawfully practice law are void.  *See Golba v. Dick's Sporting Goods, Inc.*, 238

11   Cal. App. 4th 1251, 1261 (2015); *see also McIntosh v. Mills*, 121 Cal. App. 4th 333

12   (2004) (illegal fee-sharing agreement).  In this respect, the TAA is no more vague

13   than some other licensing statutes, and it is simply not true to say that, on their face,

14   "all other state licensing schemes . . . giv[e] authority to void or otherwise impair a

15   violator's contractual rights" but the TAA does not.  Siegel MSJ at 21.

    **2.    The Remedy of Contract Voidness Furthers the Remedial
            Purposes of the TAA.**

18        Second, Siegel effectively argues that the TAA's licensing function is a sham,

19   because "[t]here is no evidence the state ever worried about 'improper persons'

20   being talent agents."  Siegel MSJ at 22.  This is wrong as a matter of California law.

21   *See Marathon*, 42 Cal. 4th at 984 ("Exploitation of artists by representatives has

22   remained the Act's central concern . . .");  *Buchwald*, 254 Cal. App. 2d at 351 ("The

23   clear object of the Act is to prevent improper persons from becoming artists'

24   managers and to regulate such activity for the protection of the public").  While in

25   some sense anyone can become a talent agent, *see* Siegel MSJ at 22, to remain a

26   talent agent one must comply with "detailed requirements for how licensed talent

27   agencies conduct their business, including a code of conduct, submission of

28   contracts and fee schedules to the state, maintenance of a client trust account,

1   posting of a bond, and prohibitions against discrimination, kickbacks, and certain

2   conflicts of interest." *Marathon*, 42 Cal. 4th at 985 (citing Cal. Lab. Code

3   §§ 1700.23-1700.47). These requirements ensure that those who procure

4   employment for artists act in their best interests. Personal managers, on the other

5   hand, face none of these requirements.

### 3.   The Non-TAA Cases on Which Siegel Relies Are Irrelevant.

8   Finally, Siegel urges this Court to disregard all recent interpretations of the

9   TAA—ranging from *Buchwald* in 1967 to *Marathon* in 2008—because they are

10  inconsistent with four California cases decided between 1914 and 1949. *See* Siegel

11  MSJ at 23. The Court can quickly dispatch of this argument as well, for several

12  reasons:

13  To start with, none of these cases involved the TAA or any of its predecessor

14  statutes. *Id.* Different licensing schemes have different aims, and the legislative

15  intent of any given scheme is a case-by-case inquiry. *See Vitek v. Alvarado Ice*

16  *Palace, Inc.*, 34 Cal. App. 3d 586, 591-92 (1973). Despite Siegel's invitation to do

17  so, the Court cannot simply ignore the relevant TAA precedents, all of which have

18  stated the remedy for violating the TAA with great clarity.

19  Additionally, even if there were a conflict between these earlier cases and the

20  line of TAA cases starting with *Buchwald* (1967) and ending with *Marathon*

21  (2008), the Court "must follow the most recent decisions of the highest court of the

22  state," i.e., *Marathon* and *Styne*. *Safeco Ins. Co. of Am. v. Guyton*, 692 F.2d 551,

23  554 n.2 (9th Cir. 1982).

24  Finally, there is no actual conflict between the authorities Siegel cites and the

25  long line of governing TAA cases:

26  *Wood v. Kreps*, 143 P. 691 (Cal. 1914), involved one of the exceptions to the

27  general rule of voidness. In *Wood*, the court drew a distinction between contracts

28  related to regulatory licensing statutes and contracts related to non-regulatory,

1    revenue-raising licensing statutes. *See Wood*, 143 P. at 692-94; *MW Erectors*, 115

2    P.3d 41, 55 (Cal. 2005) (noting distinction between law with "regulatory" purpose

3    and law with "revenue" purpose). A contract made in violation of a regulatory

4    licensing statute is void because it would frustrate the important public purposes

5    furthered by the statute. *See MW Erectors*, 115 P.3d at 55. But a contract made in

6    violation of a revenue-raising licensing statute is not necessarily void because the

7    licensing requirement was passed "not to protect the public [or the parties] . . . but

8    for the purpose of raising the revenue to be derived from the license taxes to be

9    collected." *Wood*, 143 P. at 693.

10       In *Wood*, the court refused to void the contract because the ordinance was a

11   revenue-raising statute, not a regulatory statute. *See Wood*, 143 P. at 693-94. The

12   court did not refuse to void the contract because the ordinance did not prescribe a

13   penalty, as Siegel suggests. *See* Siegel MSJ at 23. The exception identified in

14   *Wood* is inapplicable here because the TAA is a regulatory licensing statute, not a

15   revenue-raising statute. *See, e.g., Buchwald*, 254 Cal. App. 2d at 351; *Waisbren*, 41

16   Cal. App. 4th at 254; *Styne*, 26 P.3d at 349; *Marathon*, 42 Cal. 4th at 984.

17       In *Smith v. Bach*, 191 P. 14 (1920), and *Loving & Evans v. Blick*, 204 P.2d 23

18   (1949), the courts voided contracts that were unlawful, in *Smith* because of a non-

19   licensing statute and in *Loving & Evans* because of a licensing statute. Siegel

20   focuses on one sentence from each opinion, *see* Siegel MSJ at 24:

21       *Smith*: "The imposition by statute of a penalty implies a prohibition of the act

22   to which the penalty is attached, and a contract founded upon such act is void."

23   *Smith*, 191 P. at 15.

24       *Loving & Evans*: "[I]t has been repeatedly declared in this state that a contract

25   made contrary to the terms of a law designed for the protection of the public and

26   prescribing a penalty for the violation thereof is illegal and void, and no action may

27   be brought to enforce such a contract." *Loving & Evans*, 204 P.2d at 25 (citations

28   omitted).

From these cherry-picked quotations, Siegel derives the rule that a contract cannot be illegal and void unless the Legislature has prescribed a cumulative sanction in the licensing statute. *See* Siegel MSJ at 24. But *Smith* and *Loving & Evans* are subsets of the general rule of contract voidness, not limitations on it. Nothing in *Smith*, *Loving & Evans*, or any other case limits the general rule to situations in which the Legislature imposes a cumulative criminal sanction. On the contrary, as explained above, under California law, a contract can be illegal under numerous provisions of the Civil Code governing contract law, whether or not a cumulative sanction is present. *See supra* Section I(C)(1).

Finally, *Severance v. Knight-Coulihan Co.*, 177 P.2d 4 (1947), like *Wood*, mentions a potential exception to the general rule: "If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied." *Id.* at 10 (citations omitted); *see* Siegel MSJ at 24-25. Yet this exception is not applicable here either. The court in *Severance* recognized that "whether a contract is void for all purposes is a question of legislative intent." *Id.* As described above, the California Legislature determined that the remedy of contract voidness is not "too severe a penalty" for unlawful procurement. *Waisbren*, 41 Cal. App. 4th at 261. "The public policy of the Act" is "to deter personal managers from engaging in illegal activities." *Yoo v. Robi*, 126 Cal. App. 4th 1089, 1104 (2005). "Knowing that they will receive no help from the courts in recovering for their legal activities, managers are less likely to enter into illegal arrangements." *Id.* As discussed above, predecessors to the TAA contained criminal sanctions, but the Legislature consciously removed it from the TAA "because the most effective weapon for assuring compliance with the Act is the power to declare any contract

1  entered into between the parties void from the inception." *Id.* (citations and

2  quotations omitted).[3]

3      For all of these reasons, Siegel has failed to carry his burden of demonstrating

4  that the TAA is unconstitutionally vague as a matter of law.  The Court should deny

5  his motion for summary judgment.

6  **II.   THE TAA DOES NOT PLACE A SUBSTANTIAL BURDEN ON INTERSTATE**

7       **COMMERCE.**

8      In her memorandum in support of motion for judgment on the pleadings, the

9  Labor Commissioner thoroughly demonstrated that the TAA does not violate the

10  Federal Constitution's Dormant Commerce Clause because the TAA does not

11  improperly discriminate against interstate commerce.  *See* Mem. at 16-24.  The

12  Labor Commissioner also demonstrated that the TAA does not impose a substantial

13  burden on interstate commerce and, therefore, *Pike* balancing is not required.

14  Mem. at 21-23 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).  And

15  even if *Pike* balancing were required, the TAA would pass constitutional muster.

16  Mem. at 23-24.

17      In his motion for summary judgment, Siegel does not cogently argue that the

18  TAA discriminates against out-of-state commerce.[4]  *See* Siegel MSJ at 25-27;

19  Mem. at 17-18.  Instead, he focuses on *Pike* balancing.  Though not clear, his

20  argument appears to be that by requiring a license for California residents to

21  procure employment for California artists outside of California, California imposes

22  an unlawful burden on unlicensed persons, and therefore on interstate commerce.

23

24      [3] Siegel's citation to *U.S. v. Evans*, *see* Siegel MSJ at 25, does not assist him.
*Evans* is a criminal case, not a civil case.  And, unlike in *Evans*, in California

25  licensing law there is the backdrop rule of contract voidness, whether or not the rule
is specifically reiterated in any specific licensing scheme.

26      [4] In passing, Siegel suggests that the TAA is "protectionist."  Siegel MSJ at

27  27.  But as the Labor Commissioner demonstrated, to the extent a licensed in-state
agency has any advantage over an unlicensed out-of-state agency, it is only because

28  the out-of-state agency chooses not to obtain a license, which is available on equal
terms to residents and nonresidents.  *See* Mem. at 17-18.

1  *See* Siegel MSJ at 26.  As the Labor Commissioner demonstrated, the same

2  argument could be made about every licensing regime in every state in the country.

3  *See* Mem. at 22-23.  Yet no court has ever found that requiring a license to engage

4  in certain activities imposes an unconstitutional burden on interstate commerce, and

5  there is no evidence that the TAA does either.  *Id.*

6      Siegel's attempts to prove that the TAA burdens artists or out-of-state

7  entities—instead of only unlicensed California managers—are unavailing.  For

8  example, Siegel characterizes the TAA as "[r]equiring citizens to use an in-state

9  licensee versus a professional from outside the state."  Siegel MSJ at 25.  But

10  nothing in the TAA "[r]equir[es] citizens to use an in-state licensee versus a

11  professional from outside the state."  Siegel MSJ at 25.  California artists who wish

12  to procure employment outside of California can: (1) procure it themselves; (2)

13  utilize an out-of-state representative for an out-of-state engagement, *see* Mem. at

14  19-20 (discussing jurisdictional reach of TAA); or (3) utilize a licensed California

15  agent to procure engagements anywhere.  The California artist can even utilize the

16  services of an unlicensed California personal manager, but the personal manager

17  bears the risk of not being paid for their unlicensed work.

18      *Baker v. Bash*, on which Siegel relies heavily, is not an example of any sort of

19  burden on interstate commerce, let alone a substantial burden.  In *Baker*, no out-of-

20  state entity was subject to the Labor Commissioner's jurisdiction or suffered any

21  harm from the application of the TAA.  *See* Dkt. No. 13-1, Ex. N.  Only the

22  California-based personal manager had his contract voided, a result which on its

23  face did not involve a burden on interstate commerce.

24      Siegel's lengthy characterization of *Baker* is a mix of unsupported facts (e.g.,

25  "no licensing agency then or now has the same capability . . .") and false choices.

26  For example, Siegel suggests that "Ms. Baker was faced with only using a licensed

27  agent and almost inevitably not heard [sic] about the opportunity, or necessarily

28  paid [sic] out an extra 10% by involving the licensing agent."  Siegel MSJ at 26.

1   Of course, another alternative option existed: Baker's personal manager could have

2   obtained a license before procuring employment for Baker, as he was required by

3   law to do.

4       Or, as Siegel states, "[t]o ensure all procurement actions were lawful . . . Baker

5   could have (1) fired ABC and been burdened by using an inferior but licensed

6   agent; or (2) hired a licensee to work with ABC and had ABC only procure after

7   getting permission each time from the licensee." Siegel MSJ at 26. Not so. ABC,

8   based in New York, could have represented Baker in her out-of-state engagements

9   in New York or Europe without fear of being haled into a California court. Indeed,

10  the Labor Commissioner noted the existence of ABC, but did not exercise any

11  jurisdiction over ABC. *See* Dkt. No. 13-1, Ex. N at 5. The only conduct proscribed

12  in *Baker* was the unlicensed work of a California personal manager, the regulation

13  of which had nothing to do with interstate commerce.

14      At bottom, Siegel's fundamental disagreement is with licensing as a practice.

15  Tellingly, Siegel characterizes licensed agents as "inferior but licensed." Siegel

16  MSJ at 26. But the determination of who is "inferior" and who is not is for the

17  California Legislature to make, not the unlicensed individual who wants to engage

18  in certain work but does want to submit to licensure. While an intelligent layman

19  may consider himself a better lawyer than the "inferior but licensed" attorney, it

20  does not violate the Constitution for the State to prevent him from representing

21  others in court. Likewise, while a talented handyman may consider himself a

22  better contractor than the "inferior but licensed" general contractor, it does not

23  violate the Constitution for the State to prevent him from handling large

24  construction contracts. So too, while a talented individual may consider himself a

25  better artist's representative than the "inferior but licensed" talent agent, it does not

26  violate the Constitution for the State to prevent him from procuring employment or

27  engagements on the artist's behalf.

28  / / /

18

1

## CONCLUSION

2      For these reasons, the Labor Commissioner asks that the Court deny Siegel's

3 motion for summary judgment.

4

5

6 Dated:  January 19, 2018                              Respectfully submitted,

7                                                       XAVIER BECERRA
                                                        Attorney General of California
                                                        ANTHONY R. HAKL
8                                                       Acting Supervising Deputy Attorney
                                                        General
9
                                                        /s/ John W. Killeen
10                                                      JOHN W. KILLEEN
                                                        Deputy Attorney General
11                                                      *Attorneys for Defendant California
                                                        Labor Commissioner Julie Su*
12
SA2017109057
13 12930615.docx

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF SERVICE BY OVERNIGHT COURIER</u>

Case Name:   **Siegel, Rick v. Julie Su**

No.:        2:17-cv-07203 CAS (SSx)

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550.

On January 19, 2018, I served the attached **CALIFORNIA LABOR COMMISSIONER JULIE SU'S OPPOSITION TO RICK SIEGEL'S MOTION FOR SUMMARY JUDGMENT** by placing a true copy thereof enclosed in a sealed envelope with the **GOLDEN STATE OVERNIGHT**, addressed as follows:

Rick Siegel
22647 Ventura Blvd., Suite 451
Woodland Hills, CA 91364

*Pro per*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 19, 2018, at Sacramento, California.

| Tursun Bier | /s/ Tursun Bier |
|---|---|
| Declarant | Signature |

SA2017109057
12930208.docx